S01A0646. THOMAS v. THE STATE.
(555 SE2d 693)

HINES, Justice.

Christopher Thomas appeals the denial of his motion to dismiss the indictment and request for discharge and acquittal for an alleged violation of his right to a speedy trial under the Sixth Amendment of the Constitution of the United States.[1] Applying the criteria of *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), we conclude that Thomas has failed to establish that his federal constitutional right to a speedy trial has been violated, and we affirm.

A detailed chronology is in order. Thomas was arrested on February 22, 1995, in connection with the July 20, 1994, fatal shooting of James Lee Chambers. Thomas applied for bond on August 10, 1995, and was granted a $500,000 bond on August 30, 1995. He was indicted for the murder in September 1995. He again applied for bond on September 14, 1995, and it was granted on October 17, 1995; but he remained in custody at that time. In the meanwhile, on October 10, 1995, Thomas's attorney filed consolidated motions and demands for reciprocal discovery including a state statutory demand for speedy trial; however, the demand was withdrawn on the day of filing. A motion for bond reduction was filed on November 8, 1995,

[1] The denial of such a motion to dismiss, even though interlocutory in nature, may be reviewed by direct appeal. *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994).

and a hearing on several of Thomas's other motions was set for November 13, 1995. Thomas's attorney applied for a leave of absence through January 5, 1996.

On January 17, 1996, Thomas moved for a continuance until the next term of court, and between March and July 1996, Thomas's attorney requested five leaves of absence. On July 23, 1996, Thomas filed a pro se motion to dismiss, arguing, inter alia, that the State had violated his right to a speedy and public trial. In August 1996, Thomas's attorney requested that the trial be specially set, and Judge Josephine Holmes Cook set trial for January 20, 1997. But Judge Cook died and Thomas's case was assigned to Judge T. Jackson Bedford, Jr. Thomas filed a motion to recuse Judge Bedford on February 14, 1997. On the same day, he filed a motion for reduction of bond. On May 14, 1997, Thomas filed a pro se motion to place his case on the dead docket for a number of reasons, including the lack of a speedy trial. Five days later, Thomas's counsel filed another motion for bond reduction, and a rule nisi in the matter was set for May 27, 1997. Discovery and an additional witness list were filed on June 19, 1997.

Thomas was reindicted for the murder and related charges on October 7, 1997. On March 9, 1998, Thomas filed pro se a plea in abatement and motion for reduction of bond. Bond was reduced in August 1998, and Thomas was released. In June 1998, Thomas requested that the trial be specially set and in February 1999, the trial was set for the week of May 17, 1999. Meanwhile, on August 11, 1998, Thomas's counsel filed a motion to dismiss the indictment based, inter alia, upon the alleged violation of the federal right to a speedy trial.[2] On May 3, 1999, Thomas filed several motions including one to sever, one to allow another attorney to serve as lead counsel, and one for additional funds for a private investigator. At a hearing on May 10, 1999, and at the request of Thomas's counsel, the trial date was continued. On May 18, 1999, Thomas's counsel applied for leaves of absence for periods of time from May 27, 1999 through the end of August 1999. Thomas's motion to dismiss his indictment for violation of his federal right to a speedy trial was denied on May 24, 1999.

The right of an accused to a speedy trial is guaranteed by the Sixth Amendment and attaches at the time of arrest or when formal charges are brought, whichever is earlier. *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994). A claim of violation of the Sixth Amendment right is evaluated under the balancing test set forth in *Barker v. Wingo*, supra. *Nelloms v. State*, 274 Ga. 179 (549 SE2d 381)

---

[2] The motion was dated June 8, 1998.

(2001). It is a *balancing* test because "the burden of protecting the right to a speedy trial does not rest solely with a criminal defendant." *Jackson v. State*, 272 Ga. 782, 783 (534 SE2d 796) (2000). Thus, the court must consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant.

There was a 23-month delay between the time of Thomas's arrest on February 22, 1995, and when his case was initially set for trial by Judge Cook on January 20, 1997; approximately 51 months elapsed between the time of his arrest and the time that trial was set before the successor judge for the week of May 17, 1999. The considerable length of delay is presumptively prejudicial, and the State concedes that, consequently, there must be inquiry into the remaining balancing factors. *Barker v. Wingo*, supra, 407 U. S. at 530. See *Doggett v. United States*, 505 U. S. 647, 652 n. 1 (112 SC 2686, 120 LE2d 520) (1992). See also *Nelloms v. State*, supra; *Jackson v. State*, supra.

As to the reason for the delay, Thomas asserts that it was due to a change in the assistant district attorney assigned to the case, the death of Judge Cook, and a number of discovery problems on the part of the State. While such factors may well have contributed to the delay, it is plain that Thomas also bears some responsibility for it. Between the time of Thomas's arrest and the initial trial date, his attorney requested a continuance to the following term of court, six leaves of absence, and that the trial be specially set. Although the time lag following the reassignment of the case is largely unexplained, it appears here too that Thomas was a contributing factor. His attorney sought a continuance and leave of absence and again that the case be specially set. What is more, counsel filed numerous motions requiring resolution prior to trial. Even if it could be credibly said that the failure to expeditiously bring Thomas to trial was solely the fault of the State, there is simply no evidence of a deliberate attempt by the State to delay the trial in order to hamper the defense. *Barker v. Wingo*, supra, 407 U. S. at 531; *Nelloms v. State*, supra at 180. Thus, to the extent that the reason for the delay is attributable to the State, although a negative factor, it is relatively benign. Id.; *Perry v. Mitchell*, 253 Ga. 593, 595 (322 SE2d 273) (1984).

The defendant must assert the right to a speedy trial, and the failure to do so, " 'is entitled to strong evidentiary weight' against the defendant." *Perry v. Mitchell*, supra at 595, quoting *Barker v. Wingo*, supra, 407 U. S. at 531. The alleged violation of the federal right to a speedy trial was first raised by Thomas's counsel in the motion to dismiss filed on August 11, 1998, some 42 months after Thomas's

arrest.[3] Therefore, the delay in asserting the right must be weighted against Thomas. *Nelloms v. State*, supra at 181. "Delay often works to a defendant's advantage." Id. And it may well have been part of the trial strategy here. The apparent tactic was to press for a reduction in bond until Thomas could be released, which he was in 1998.

In assessing the final *Barker v. Wingo* factor, this Court must consider three interests the right to a speedy trial was designed to protect: oppressive pre-trial incarceration, anxiety and concern of the accused, and the possibility that the defense will be impaired. *Brannen v. State*, 274 Ga. 454 (553 SE2d 813) (2001); *Nelloms v. State*, supra at 181; *Boseman v. State*, supra at 733 (1) (d). But in order to weigh the prejudice factor in the defendant's favor, the defendant must offer specific evidence that one or more of these interests apply. *Jackson v. State,* supra at 783.

Even though Thomas's period of incarceration was substantial, he does not contend that it was oppressive; indeed, there is no " 'proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment.' " *Jackson v. State,* supra at 785. Nor does Thomas assert or show any specific anxiety or concern. See *Nelloms v. State*, supra at 181. See also *Mullinax v. State*, 273 Ga. 756, 759 (2) (545 SE2d 891) (2001). His claim of prejudice rests, as it did before the trial court, on his contention that no actual or affirmative showing of prejudice is required, and his bare assertion that the delay has substantially impaired his ability to locate unnamed "essential" defense witnesses. Contrary to Thomas's claim, he is not relieved of offering specific evidence of his claim of impairment of his defense.[4] *Nelloms v. State*, supra at 181; *Mullinax v. State*, supra at 759 (2); *Jackson v. State,* supra at 783, 785. And this he did not do.

Balancing the foregoing factors, including the fact that Thomas failed to show any specific impairment to his defense, that he waited so long to assert his right to a speedy trial, and that he himself substantially contributed to the delay in trial, we conclude that the trial court properly denied Thomas's claim of the violation of his Sixth Amendment right to a speedy trial. *Nelloms v. State*, supra at 181; *Boseman v. State,* supra at 734 (2).

*Judgment affirmed. All the Justices concur.*

---

[3] Thomas did initially mention his right to a speedy trial in his pro se motion to dismiss filed on July 23, 1996. But this was 17 months after his arrest. See *Johnson v. State*, 268 Ga. 416, 418 (2) (490 SE2d 91) (1997). What is more, on the heels of it, Thomas's counsel filed a motion to specially set the trial, which was scheduled for six months later.

[4] Even though the presumption of prejudice from the passage of time strengthens with the passage of time, it alone will not support a Sixth Amendment claim. *Boseman v. State,* supra at 734 (1).

DECIDED NOVEMBER 19, 2001.

*Dwight L. Thomas*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.