## A01A1847. CALLAWAY v. THE STATE.
### (572 SE2d 751)

ELDRIDGE, Judge.

The instant case is before us again on remand from the Supreme Court of Georgia.[1] By way of review, this Court, in *Callaway v. State*,[2] relied upon United States Supreme Court precedent, *United States v. MacDonald*,[3] and distinguished between the statutory right to a speedy trial under OCGA § 17-7-170 and the constitutional right to a speedy trial as illustrated in the seminal case of *Barker v. Wingo*.[4] In so doing, we held in *Callaway* — as the United States Supreme Court held in *United States v. MacDonald*, supra — that a direct appeal will not lie from the denial of a motion to dismiss based upon an alleged violation of the constitutional right to a speedy trial. We found this to be so because:

(a) An alleged violation of the constitutional right to a speedy trial does not implicate double jeopardy concerns:

> Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of the [United States Supreme] Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. *It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.*[5]

This is in direct contrast to the speedy trial right under OCGA § 17-7-170 which explicitly encompasses a "right not to be tried" within the language of the statute.[6]

---

[1] *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002).

[2] 251 Ga. App. 11 (553 SE2d 314) (2001).

[3] 435 U. S. 850, 861 (98 SC 1547, 56 LE2d 18) (1978).

[4] 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

[5] (Emphasis supplied.) *United States v. MacDonald*, supra at 861 (III). See U. S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," which on its face does not encompass a right not to be tried.).

[6] OCGA § 17-7-170 (b) ("If the person is not tried when the demand is made or at the next succeeding regular court term thereafter, provided at both court terms there were juries impaneled and qualified to try him, he shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation.").

(b) Pretrial disposition of a constitutional speedy trial claim is at best speculative, since the essence of the claim is that delay prejudiced the ability to mount a trial defense:

> Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial — when prejudice can be better gauged — would also be denied. Hence, pretrial denial of a speedy trial claim can never be considered a complete, formal, and final rejection by the trial court of the defendant's contention; rather, the question at stake in the motion to dismiss necessarily "remains open, unfinished and inconclusive" until the trial court has pronounced judgment.[7]

This is in direct contrast to the speedy trial claim under OCGA § 17-7-170 which is procedural only and looks to whether delay outside the time limits imposed by the statute simply *exists*, not the effect/result of any such delay on the trial of the case. The statutory, procedural determination under OCGA § 17-7-170 is readily made pretrial.

And, finally, (c) a direct appeal of an alleged violation of the constitutional right to a speedy trial can easily become an avenue for abusive delay:

> Unlike a double jeopardy claim, which requires at least a colorable showing that the defendant once before has been in jeopardy of federal conviction on the same or a related offense, in every case there will be some period between arrest or indictment and trial during which time every defendant will either be incarcerated or on bail subject to substantial restrictions on his liberty. Thus, any defendant can make a pretrial motion for dismissal on speedy trial grounds and, if . . . not honored, could immediately appeal its denial. . . . [W]e decline to exacerbate pretrial delay.[8]

This is in direct contrast with an OCGA § 17-7-170 speedy trial claim that contains procedural safeguards which preclude the use of that statute solely for purposes of abusive delay; safeguards such as the fact that,

> Under OCGA § 17-7-170, a demand for speedy trial must be filed within a specific time period well in advance of any

---

[7] (Citation and punctuation omitted.) *United States v. MacDonald*, supra at 858-859.
[8] Id. at 862-863.

trial date; the time period in which the trial must be held is clearly specified; and service of notice must be accomplished. With such procedures in place, a motion to dismiss based on a violation of OCGA § 17-7-170 is not unexpected when meritorious and insufficient to divest the trial court of jurisdiction when clearly frivolous.[9]

None of these specific procedural safeguards exist with regard to the constitutional right to a speedy trial. Moreover, it has been recognized that "delay" is a very real defense strategy.[10] A motion to dismiss based solely on constitutional speedy trial grounds can be filed immediately prior to trial; without notice; without any indication that speedy trial concerns were ever at issue; and completely without merit. "[W]hen interposed for purposes of delay, the denial of such motion will accomplish its goal if direct appeal is available as a matter of right."[11]

Notwithstanding the above, the Supreme Court of Georgia reversed this Court's decision in *Callaway*.[12] The Supreme Court cited *Thomas v. State*,[13] which cited *Brannen v. State*,[14] which cited *Boseman v. State*,[15] which — finally — cited *Hubbard v. State*,[16] involving a statutory, OCGA § 17-7-170 speedy trial claim.[17] The Supreme Court of Georgia held that,

> we cannot see any persuasive rationale for . . . creating a distinction between constitutional and statutory speedy trial rulings. The statutory provision is obviously analogous in its purpose to the constitutional right to a speedy trial. As the concept of double jeopardy is closely implicated in both provisions, a defendant may directly appeal from the pretrial denial of either a constitutional or statutory speedy trial claim.[18]

On the basis of the above holding, the number of direct appeals filed solely because of an alleged violation of a constitutional right to a

---

[9] *Callaway v. State*, supra, 251 Ga. App. at 16.

[10] See, e.g., *Thomas v. State*, 274 Ga. 492, 495 (555 SE2d 693) (2001) ("Delay often works to a defendant's advantage. And it may well have been part of the trial strategy here.") (citation and punctuation omitted).

[11] *Callaway v. State*, supra, 251 Ga. App. at 16-17.

[12] *Callaway v. State*, supra, 275 Ga. at 332.

[13] 274 Ga. at 492, n. 1.

[14] 274 Ga. 454, 455, n. 1 (553 SE2d 813) (2001).

[15] 263 Ga. 730, n. 1 (438 SE2d 626) (1994).

[16] 254 Ga. 694 (333 SE2d 827) (1985).

[17] *Callaway v. State*, supra, 275 Ga. at 332.

[18] (Citations omitted.) Id. at 332-333.

speedy trial will undoubtedly increase in the Supreme Court of Georgia on capital felony cases,[19] as it has in this Court on other criminal offenses.[20] And we know that, in some instances, "Time makes more converts than reason."[21]

So, as always, we adopt the decision of the Supreme Court of Georgia as our own, and, in so doing, we will review on direct appeal Callaway's claim that the trial court erred in denying his motion to dismiss based on a violation of his constitutional right to a speedy trial. The trial court's decision with regard to such motion will not be reversed unless an abuse of discretion is shown.[22]

Between his 1998 arrest on the instant charges and the present time, Callaway has not been incarcerated on such charges. He bonded out immediately after his arrest. He never sought trial on the instant charges and was informed by his defense attorney that he need only appear for calendar call when his case was listed on the calendar; defense counsel never told Callaway to come to court expecting to go to trial: "I didn't come for that." No effort was made to locate defense witnesses in addition to the single witness who testified on Callaway's behalf at the preliminary hearing. And no effort was made to locate and interview witnesses named in the police report.

In 2000, Callaway was incarcerated for six months on an unrelated misdemeanor conviction. In July 2000, Callaway's defense counsel sent the prosecutor two different letters about various cases; included therein, counsel expressed a desire to "work out Dextrell Callaway's case before he finishes up his current State Court sentence." No mention was made of trial, and plea negotiations were ongoing.

Callaway was released December 4, 2000. A new district attorney took office, and Callaway's case was reevaluated along with other outstanding criminal cases. Callaway's case was reindicted to add a kidnap charge, as well as an additional charge of aggravated assault. Callaway remained out on bond on the charges. Plea negotiations broke down, and the case was placed on the trial calendar for February 2001. A motion to dismiss based on an alleged violation of the constitutional right to a speedy trial was filed in March 2001, after Callaway's case was placed back on the trial calendar.

---

[19] See, e.g., *Nelloms v. State*, 274 Ga. 179 (549 SE2d 381) (2001).

[20] See, e.g., *Owens v. State*, Case No. A02A2436; *Bankston v. State*, Case No. A02A1562; *Bolden v. State*, Case No. A02A1095; *Richardson v. State*, Case No. A02A0631; *Parris v. State*, Case No. A02A0630; *Coney v. State*, Case No. A02A0440; *Kicklighter v. State*, Case No. A02A0376; *Dickey v. State*, Case No. A01A1982; *McCravy v. State*, Case No. A01A1713; *Weaver v. State*, Case No. A01A1663; *Williams v. State*, Case No. A01A0908.

[21] Paine, Thomas, Common Sense, Introduction, February 14, 1776.

[22] *Burns v. State*, 265 Ga. 763, 764 (462 SE2d 622) (1995).

A hearing on Callaway's motion to dismiss was held, during which Callaway testified that the defense was ready for trial during the call of the February 2001 calendar. He testified that he had secured his witness and that he was unaware of any other witnesses for the defense. While a law student interning with Legal Aid took the stand and testified that he could not locate three witnesses listed on the original police report, the intern was unable to state what evidence was expected from these witnesses; but that the witnesses were only to "clarify discrepancies" in other evidence, which discrepancies went unidentified. Further, Callaway testified as to these unavailable witnesses that he "didn't really know them. We talked about them, but I never knew my neighbors real good." Callaway stated that he had not been looking for the individuals named in the police report, or any other witnesses for that matter.

Callaway also testified as to the anxiety and concern caused by the delay in trial on the instant charges. He testified that he "got his life together" in January 2001, after being released on his state court conviction, and that thereafter, he felt "pressure" because of the pending charges that were placed on the trial calendar one month later.

In addition, Callaway's defense counsel stated that she did not pursue trial in the instant case:

> I got this case, Your Honor, when I first came to the office, and I was preparing it for trial in 1998 when I first came to the office and then was told that it wasn't going to be reached and, you know, had other serious charges and put that one away and didn't stop preparing at the time. Any time it was on a trial calendar, I went back to it and got it ready for trial and was just — Any time I was told by Mr. Thompson [prosecutor] its not going to be reached, we're not going to call it, I mean the nature of my job is that I just, you know, it goes away then and I got to work on somebody else's case that's going to trial on Monday morning. . . . And he had this subsequent incident heard in 1999, and quite frankly I think at that point it stopped being put on trial calendars. I think the District Attorney's Office was looking into it, and I gave them some time to look into it and didn't renegotiate or reissue discussions.

After hearing evidence and argument, the trial court denied the motion. A direct appeal was made from this ruling. Callaway remains out on bond during the pendency of the instant appeal. *Held*:

The approximately 37-month delay between the offense and the case's appearance on the trial calendar in February 2001 creates a

threshold presumption of prejudice; however, delay alone does not constitute a violation of the Sixth Amendment right to a speedy trial.[23] Instead, we must balance the following factors outlined in *Barker v. Wingo*:[24] (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant.[25] The last factor, the prejudice prong, requires an examination of the three interests which the speedy trial right was designed to protect — the prevention of oppressive pretrial incarceration, the minimization of the defendant's anxiety and concern, and the limitation of the possibility that the defense will be impaired.[26]

Upon consideration of the factors described above, it appears that Callaway and his attorney acquiesced in the delay of the trial of the case because Callaway was not incarcerated. His defense counsel did not seek trial and informed Callaway repeatedly that trial was not forthcoming and that he need not come to court in anticipation of trial. At no time did Callaway ever assert his right to trial or file a demand for trial. Moreover, Callaway remained out on bond on the instant offense during the entire time prior to trial. "A party cannot complain of error that his own conduct aided in causing."[27]

Finally, and most significantly, the only prejudice asserted is the inability to interview three witnesses who were listed on the police report in *support* of Callaway's arrest on the instant charges. However, there was never any attempt to interview these witnesses in the three years prior to filing the motion to dismiss — even though Callaway's defense counsel stated that she had prepared the case for trial in 1998. Callaway specifically testified that his sole witness was ready to testify at trial in February 2001, as she had in the 1998 preliminary hearing, and that he knew of no other defense witnesses.

As to "oppressive pre-trial incarceration," there clearly was none. And the only "anxiety and concern" expressed by Callaway were condensed into the one-month period of time between the time he "got his life together" in January 2001 and the placement of the reindicted charges on the trial calendar in February 2001; prior to that time, the trial of the case was not pursued by any interested party, and a plea bargain was sought.

Balancing the factors pursuant to *Barker v. Wingo*,[28] we find no manifest abuse of discretion in the trial court's determination that

---

[23] *Thomas v. State*, 233 Ga. App. 224, 225 (2) (504 SE2d 59) (1998).

[24] Supra.

[25] See *Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997); *Thomas v. State*, supra, 233 Ga. App. at 225 (2).

[26] *Boseman v. State*, supra at 732.

[27] (Citations and punctuation omitted.) *Smith v. State*, 202 Ga. App. 362 (414 SE2d 504) (1991).

[28] Supra at 533.

the State did not violate Callaway's Sixth Amendment right to a speedy trial. Thus, Callaway's motion to dismiss based thereon was properly denied.[29]

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED OCTOBER 22, 2002.

*Elizabeth M. Grant,* for appellant.
*Kenneth W. Mauldin, District Attorney, Anna E. Watkins, Assistant District Attorney,* for appellee.

---

[29] *Judge v. State,* 240 Ga. App. 541, 542-543 (1) (524 SE2d 4) (1999).