A02A0440. CONEY v. THE STATE.
(578 SE2d 193)

MILLER, Judge.

In March 1997, Antonio Coney was arrested and charged with rape, armed robbery, aggravated assault, terroristic threats, and false imprisonment, all arising out of an alleged violent sexual assault of a 78-year-old woman. Just prior to the scheduled trial date in August 2000, Coney moved to dismiss the indictment, arguing that the 41-month delay denied him his federal and state constitutional rights to a speedy trial. Following an evidentiary hearing, the court denied his motion on the grounds that he had not asserted his rights sooner and that his defense was not prejudiced by the delay. He filed a direct appeal. See *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002). We hold that the trial court did not abuse its discretion in holding that Coney's constitutional rights to a speedy trial were not violated, and we therefore affirm.

On March 12, 1997, a 78-year-old woman identified Coney (whom she had known for years) to police as the man who had just raped and robbed her at knifepoint in her home. Police immediately arrested Coney and placed him in jail. He was indicted in June 1997 for rape, armed robbery, aggravated assault, terroristic threats, and false imprisonment. Bond was set at $125,000, which Coney did not post. He repeatedly applied to have the bond reduced, which was eventually granted in April 1998, leading to his release in May 1998.

While Coney was incarcerated, his counsel in July 1997 filed a sealed ex parte petition for a confidential psychiatric evaluation. His counsel asked that the evaluation determine Coney's mental capacity at the time of the incident and determine his competency to stand trial, and that this information be revealed only to defense counsel. The court immediately granted the petition in a sealed order.

Beginning in July 1997, the case appeared on several trial calendars and was reset for unspecified reasons, until it was assigned to another judge in January 2000. From February to July 2000, the case again appeared on several trial calendars and was reset at the request of both the State and Coney. In March 2000, the State received the DNA results, matching Coney to the semen retrieved from the victim. In July 2000, the court published a calendar scheduling an August 22 trial date. On August 1, Coney moved to dismiss the indictment, arguing that the 41-month delay violated his federal and state constitutional rights to a speedy trial. That same day, Coney also gave notice to the State that he intended to enter an insanity plea.

At the August 22 trial date, the State announced "Ready," but Coney announced "Not Ready." The trial was reset. At Coney's request, the court months later reissued an order authorizing the

confidential psychiatric evaluation. The court held a hearing on the motion to dismiss, during which Coney presented evidence, including that of the psychiatrist (on staff at the jail) who had treated him once in May 1997 during his incarceration.[1] Based on the evidence presented, the court denied the motion to dismiss.

Coney appealed directly to this Court, which appeal this Court in an unpublished order dismissed for failure to file an application for appeal. The Supreme Court of Georgia reversed and remanded the case to this Court, holding that the matter was directly appealable. *Callaway*, supra, 275 Ga. at 333. We therefore now consider whether the trial court erred in denying Coney's motion to dismiss based on a violation of his federal and state constitutional rights to a speedy trial. "The trial court's decision with regard to such motion will not be reversed unless an abuse of discretion is shown." (Footnote omitted.) *Callaway v. State*, 258 Ga. App. 118, 121 (572 SE2d 751) (2002); see *Brown v. State*, 264 Ga. 803, 805 (2) (450 SE2d 821) (1994); *Thomas v. State*, 233 Ga. App. 224, 225-226 (2) (504 SE2d 59) (1998).

*Barker v. Wingo*, 407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972), identified the four factors a court should consider in deciding a motion to dismiss on grounds of a federal speedy trial violation: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Footnote omitted.) See *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994). This balancing test also applies when considering alleged state constitutional speedy trial violations. Id.; accord *Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997). "The fourth factor requires the court to consider three interests: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired. [Cit.]" *Johnson*, supra, 268 Ga. at 417 (2).

(a) *Length of Delay*. The delay in this case was 41 months from arrest to the date Coney filed his motion to dismiss. "The State concedes that the [41]-month delay is presumptively prejudicial, thus requiring this Court to inquire into the other factors that go into the balance." (Citations and punctuation omitted.) *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001); see *Johnson*, supra, 268 Ga. at 417 (2) (21-month delay is presumptively prejudicial); *Boseman*, supra, 263 Ga. at 732 (1) (a) (27-month delay is presumptively prejudicial).

(b) *Reason for Delay*. The State fails to account for all of the delay and can only say that a portion was due to Coney when his counsel

---

[1] The jail psychiatrist, who treated Coney before the July 1997 order for psychiatric evaluation, did not evaluate his competency to stand trial or his responsibility for any acts.

agreed to and sought continuances and asked for a brief delay for maternity leave. The record shows that for some of the time, the State was waiting for the DNA results, which it did not receive until March 2000. Unless clear reasons are shown for a delay, we treat the delay as caused by the State's negligence. See *Brannen*, supra, 274 Ga. at 455. Nowhere in the record, however, is there any evidence that the State intentionally dragged its feet to impair Coney's defense. "Therefore, although the delay attributable to the State is a negative factor, it is relatively benign. [Cit.]" *Johnson*, supra, 268 Ga. at 418 (2); accord *Brannen*, supra, 274 Ga. at 456.

(c) *Defendant's Assertion of His Right to Speedy Trial.* "It is the defendant's responsibility to assert the right to trial, and the failure to exercise that right is entitled to strong evidentiary weight against the defendant." (Citations and punctuation omitted.) *Brannen*, supra, 274 Ga. at 456; accord *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001). As in *Brannen* and *Nelloms*, this third factor must weigh against Coney because he did not file a statutory demand for speedy trial under OCGA § 17-7-171 and did not raise his constitutional right to a speedy trial for the 41 months between his arrest and the filing of his motion to dismiss. See *Brannen*, supra, 274 Ga. at 456; *Nelloms*, supra, 274 Ga. at 181; see also *Boseman*, supra, 263 Ga. at 733 (1) (c). Indeed, as in *Brannen*, supra, 274 Ga. at 456, he waited until shortly before the August 22 trial date to file the motion to dismiss the indictment on speedy trial grounds.

(d) *Prejudice to Defendant.* "As to the matter of prejudice, we weigh this factor most heavily in determining whether a defendant's constitutional rights have been violated. [Cit.]" *Jernigan v. State*, 239 Ga. App. 65, 67 (517 SE2d 370) (1999). A court determines prejudicial delay by considering three interests that the right to a speedy trial was designed to protect: preventing oppressive pretrial incarceration, minimizing undue anxiety and concern to the defendant, and reducing the possibility of impairing the defense. *Thomas v. State*, 274 Ga. 492, 495 (555 SE2d 693) (2001). "[T]o weigh the prejudice factor in the defendant's favor, the defendant must offer specific evidence that one or more of these interests apply." Id., citing *Jackson v. State*, 272 Ga. 782, 783 (534 SE2d 796) (2000).

(i) *Oppressive Pretrial Incarceration.* Coney spent 14 months in jail before being released on bond. Even though this period of incarceration was substantial, Coney offers no proof of substandard conditions or other oppressive factors beyond those that necessarily attend imprisonment. Accordingly, he has shown no specific evidence on this factor as prejudicial. See *Thomas*, supra, 274 Ga. at 495; *Jackson*, supra, 272 Ga. at 785.

(ii) *Anxiety and Concern Caused to Defendant.* Coney also fails to show specific evidence of the "anxiety and concern" factor. At most

the psychiatrist testified that there was a possibility that the 14-month incarceration (but not any of the other 27 months of delay) may have exacerbated Coney's mental condition. This evidence did not convince the trial court, and we discern no abuse of discretion in this regard.

(iii) *Impairment of Defense.* The most important prejudice component of the speedy trial equation is whether Coney showed that the delay impaired his defense. *Mullinax v. State,* 273 Ga. 756, 759 (2) (545 SE2d 891) (2001); see *Boseman,* supra, 263 Ga. at 734 (2). Coney claims that the delay impaired his defense because the psychiatrist testified that it would be impossible to determine, three and one-half years after the fact, the level or acuteness of Coney's longstanding schizophrenia on the day of the incident. Thus, Coney argued that the 41-month delay impaired his ability to assert his insanity defense.

This argument ignores two facts. First, early on in the case during the summer of 1997, the trial court granted Coney's motion for a confidential psychiatric evaluation regarding his possible insanity on the day of the incident, but Coney did not proceed to obtain that evaluation until *after* the 41-month delay. He cannot now complain that the 41-month delay prevented him in the summer of 1997 from obtaining a more timely psychiatric evaluation. Moreover, the State was unaware of the sealed order allowing the evaluation and therefore had no reason to believe extreme diligence was needed in bringing the case to trial to preserve Coney's defense.

Second, the psychiatrist testified that unless obtained within 48 hours of the incident, a psychiatric evaluation could not determine Coney's mental condition as of the date of incident. Thus, under the evidence presented by Coney and relied upon by the trial court, the 41-month delay would have had no impact on Coney's ability to present an insanity defense, as the two-day period had long expired before any delay occurred. Since the evidence showed that the delay did not prejudice Coney or otherwise impair his defense, this fourth factor weighs against Coney.

"We bear in mind that none of the above factors is either a necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial, and that all of the factors should be considered together in a balancing test of the conduct of the prosecution and [Coney]." (Citation omitted.) *Nelloms,* supra, 274 Ga. at 181. Balancing the foregoing factors, particularly that Coney suffered no impairment to his defense and that he waited 41 months before asserting his right to a speedy trial, we hold that the trial court did not abuse its discretion in denying the motion to dismiss the indictment on grounds of a speedy trial constitutional violation. See id.; *Boseman,* supra, 263 Ga. at 734 (2).

*Judgment affirmed. Johnson, P. J., concurs. Blackburn, P. J., concurs fully and specially.*

BLACKBURN, Presiding Judge, concurring fully and specially.

I fully concur in this Sixth Amendment of the Federal Constitution speedy trial denial case. I write separately to address our failure to follow U. S. Supreme Court precedent in *United States v. MacDonald*[2] on the issue of pre-trial direct appeal on speedy trial denials based on alleged Sixth Amendment federal constitutional violations as opposed to such claims which are based on OCGA § 17-7-170, Georgia's statutory speedy trial demand statute. I do not believe that the 1978 U. S. Supreme Court holding in *MacDonald*, supra, permits a right to a pre-trial direct appeal on an alleged denial of a Sixth Amendment speedy trial demand. The holdings of the U. S. Supreme Court on federal constitutional questions are binding on all courts.

As Justice Gregory made clear in the 1985 case *Hubbard v. State*,[3] citing *Smith v. State*[4] and *Patterson v. State*,[5] because of the express language of the statute, a defendant stands acquitted as a matter of law when the State fails to comply with a statutory speedy trial demand under OCGA § 17-7-170. This is so because double jeopardy rights are implicated in a statutory speedy trial denial. Therefore, unlike Sixth Amendment speedy trial denials, such a defendant is entitled to full double jeopardy protection (Fifth Amendment, U. S. Constitution) against the ordeal of the trial itself, because the statute provides that on violation of his rights under the statute, the defendant stands acquitted. Thus, a pre-trial direct appeal is appropriate in such a case. In an OCGA § 17-7-170 claim, the defendant is saying, " 'I may not now be tried because the time during which I must have been placed on trial has passed.' " *Hubbard*, supra at 695.

This is not the case in Sixth Amendment speedy trial claims as discussed in *MacDonald*, supra, and *Barker v. Wingo*,[6] for which there is no pre-trial right of direct appeal. We note that *Hubbard* does not address the 1978 ruling of the U. S. Supreme Court in *MacDonald*, that pre-trial rights to appeal do not apply in alleged Sixth Amendment speedy trial denials under the Federal Constitution. It was unnecessary to do so because the distinction between a Georgia statutory speedy trial denial and a Federal Sixth Amendment speedy trial denial, under existing U. S. Supreme Court case law was clear at the time *Hubbard* was issued in 1985. Double Jeopardy protections

---

[2] *United States v. MacDonald*, 435 U. S. 850 (98 SC 1547, 56 LE2d 18) (1978).
[3] *Hubbard v. State*, 254 Ga. 694 (333 SE2d 827) (1985).
[4] *Smith v. State*, 169 Ga. App. 251 (312 SE2d 375) (1983).
[5] *Patterson v. State*, 248 Ga. 875 (287 SE2d 7) (1982).
[6] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

were not implicated in Sixth Amendment speedy trial denial cases as was clear under *Barker*, supra, 1972, and *MacDonald*, supra, 1978. In *MacDonald*, supra, a unanimous U. S. Supreme Court, in reversing the Fourth Circuit Court of Appeals, held that a defendant, before trial, could not appeal a Federal District Court's order denying his motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial, since (1) such pre-trial order lacked the finality traditionally considered indispensable to appellate review and did not represent a complete, formal, and final rejection by the trial court of the defendant's claim, (2) the order was not collateral to, and separable from, the principal issue at the impending trial which was whether the accused was guilty of the offense charged, (3) a speedy trial claim was not sufficiently independent of the outcome of the trial to warrant pre-trial appellate review, and (4) the order did not involve a right which would be lost if review had to await final judgment.

In the following post-*Hubbard* cases, *Thomas v. State*,[7] *Brannen v. State*,[8] *Boseman v. State*,[9] and *Boulton v. State*,[10] no statutory speedy trial violations under OCGA § 17-7-170 claims were involved. Unlike *Hubbard*, each of these cases involved federal constitutional Sixth Amendment speedy trial violations. By a footnote citation to *Hubbard*, supra, a 1985 statutory speedy trial case, which therefore included no Sixth Amendment speedy trial case, and without a *MacDonald* Sixth Amendment speedy trial analysis, each of these cases applied the statutory speedy trial pre-trial direct appeal right to Sixth Amendment speedy trial violations. None of these cases was based on OCGA § 17-7-170 claims as was *Hubbard*, and no *MacDonald* Sixth Amendment analysis was made in any of these cases.

In *Callaway v. State*,[11] an alleged Sixth Amendment speedy trial denial case, this Court held that the defendant was not entitled to a pre-trial direct appeal, except as authorized under the provisions of OCGA § 5-6-34 (b), which requires a certificate of immediate review by the trial judge.

The Supreme Court of Georgia subsequently reversed our decision in *Callaway*. In doing so, the Supreme Court of Georgia held:

> [W]e cannot see any persuasive rationale for departing from settled precedent as to the applicable methods of pre-trial appeal and creating a distinction between constitutional and

---

[7] *Thomas v. State*, 274 Ga. 492, n. 1 (555 SE2d 693) (2001).
[8] *Brannen v. State*, 274 Ga. 454, 455, n. 1 (553 SE2d 813) (2001).
[9] *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994).
[10] *Boulton v. State*, Case No. S00C1510, decided October 20, 2000.
[11] *Callaway v. State*, 251 Ga. App. 11 (553 SE2d 314) (2001).

statutory speedy trial rulings. The statutory provision is obviously analogous in its purpose to the constitutional right to a speedy trial. *Ould v. State.*[12] As the concept of double jeopardy is closely implicated in both provisions, a defendant may directly appeal from the pre-trial denial of either a constitutional or statutory speedy trial claim. *Hubbard v. State*, supra at 695; *Ould v. State*, supra at 55 (1).

*Callaway v. State.*[13]

In 1978, the U. S. Supreme Court provided a four-part analysis of Sixth Amendment speedy trial denial appeal rights under the Federal Constitution which clearly indicated that no double jeopardy rights were implicated therein and held that no pre-trial appeal rights exist in such a case. In *Callaway*, our Supreme Court has held otherwise. While this Court is bound by the decisions of both the U. S. Supreme Court and those of the Supreme Court of Georgia, under the Georgia Constitution, we must defer to the holdings of the Supreme Court of Georgia, where they have established law, whether or not they have considered holdings of the U. S. Supreme Court. But for this requirement, I would follow the holding of *MacDonald* in this case.

DECIDED FEBRUARY 11, 2003 — 

*King, King & Jones, David H. Jones, Matthew Ciccarelli*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[12] *Ould v. State*, 186 Ga. App. 55 (1) (366 SE2d 392) (1988), a case which totally ignores the U. S. Supreme Court's 1978 ruling in *MacDonald*, which holds that a Sixth Amendment speedy trial violation does not authorize a pre-trial direct appeal.

[13] *Callaway v. State*, 275 Ga. 332-333 (567 SE2d 13) (2002).