## A01A0908. WILLIAMS v. THE STATE.
### (581 SE2d 326)

ADAMS, Judge.

Frank Lee Williams appeals the trial court's denial of his motion to dismiss for failure to provide him a speedy trial based on the Sixth Amendment of the Constitution of the United States. For the following reasons, we reject Williams' argument and affirm.

Preliminarily, we note that this is the second appearance of this case in this court. On August 23, 2001, this court dismissed Williams' appeal, based on the rationale of *Callaway v. State*, 251 Ga. App. 11 (553 SE2d 314) (2001). Williams appealed the dismissal, and, after granting certiorari, the Supreme Court consolidated this case with two other similar dismissals from this court. In *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002), the Supreme Court reversed the three dismissals and determined that pretrial orders denying constitutional speedy trial claims are directly appealable. Thus, this case is now before us on remand from the Supreme Court.[1]

The record before us shows that the acts for which Williams was charged — trafficking in cocaine and violation of the Georgia Controlled Substances Act — occurred on or about December 3, 1997. On May 29, 1998, the indictment was filed, charging Williams with trafficking in cocaine and violating the Georgia Controlled Substances Act by selling cocaine. Williams was apparently arrested after the indictment was filed. On July 7, 2000, Williams moved for a dismissal of the indictment based on a violation of his Sixth Amendment right to a speedy trial. On July 11, 2000, the superior court denied Williams' motion to dismiss the indictment, and Williams appeals this denial.

In his sole enumeration of error, Williams argues that the superior court's denial of his motion for discharge and acquittal was erroneous. He contends that the delay in trying his case was presumptively prejudicial and violated his constitutional rights. He further argues, citing *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994), that where no reason appears for the delay in bringing a case

---

[1] The other two cases remanded from the Supreme Court in *Callaway* are *Callaway v. State*, 258 Ga. App. 118 (572 SE2d 751) (2002), and *Coney v. State*, 259 Ga. App. 525 (578 SE2d 193) (2003).

to trial, the court must treat it as caused by the negligence of the State.

We note that the trial court's decision with regard to this type of motion will not be reversed unless an abuse of discretion is shown. *Callaway v. State*, 258 Ga. App. 118 (572 SE2d 751) (2002). In determining the time framework within which to analyze Williams' claim, we note this speedy trial right attaches "at the time of arrest or when formal charges are brought, whichever is earlier." (Citation omitted.) *Boseman v. State*, 263 Ga. at 731. Using this guideline in this case, we find that Williams' right to a speedy trial attached on the date the formal charges were brought, May 29, 1998.

We next evaluate Williams' claims with reference to the relevant criteria, as set forth by the court in *Boseman v. State*:

> In *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated[:] (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant. As to the prejudice factor, there are three interests which the speedy trial right was designed to protect, the last being the most important: (a) to prevent oppressive pre-trial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired.

(Citations and punctuation omitted.) *Boseman v. State*, 263 Ga. at 731-732 (1).

a. *Length of Delay.*

> This factor actually figures into the speedy trial analysis in two respects. First, a court must determine whether the delay has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, the accused cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the delay passes this threshold test of presumptive prejudice, then the *Barker* inquiry is triggered. The delay is then considered a second time by fac-

toring it into the prejudice prong of the *Barker* analysis, with the presumption that pretrial delay has prejudiced the accused intensifying over time.

(Citations and punctuation omitted.) *Boseman v. State*, 263 Ga. at 732 (1) (a).

The *Boseman* court stressed that even if there was a presumption of prejudice because of the delay, it was important to examine the other criteria. In this case, the 26-month delay raises a presumption of prejudice, similar to the presumption of prejudice which the 27-month delay raised in *Boseman*. Accordingly, we now analyze the other factors to determine if Williams was denied his constitutional right to a speedy trial.

b. *Reason for Delay.*

"At the outset, we note that nowhere in the record does it show that the State has deliberately attempted to delay the trial in order to hamper the defense, a. serious abuse that would be weighted against the State. [Cit.]" *Boseman v. State*, 263 Ga. at 732 (1) (b).

It appears from the record that many of the delays in bringing the case to trial were attributable to defense counsel. The State pointed out at the hearing on Williams' motion that he had experienced problems maintaining defense counsel; at the start of the case, he was represented by attorney Ike Emmanuel Duru. Duru voluntarily surrendered his license to practice law on May 30, 2000.[2]

After noting that the case had been put on a trial calendar on December 3, 1999; March 27, 2000; and April 24, 2000, the trial court recalled that Duru failed to show up for many calendar calls and that it was difficult commanding Duru's presence in the courtroom. The court also recalled that as of March 2000, Williams was going to hire another attorney to try the case in April 2000. Furthermore, the court noted that the State had been ready the "last three or four trial calls" to try the case.

In summary, the delay appears to have been primarily attributable to Williams, not to the actions of the State. Of course,

> merely because counsel is not diligent in protecting the right to a speedy trial is no excuse for the failure of the State to intervene and prevent an egregiously long period of pretrial detention. However, we must acknowledge that delay often does work to the advantage .of an accused, and thus can be the result of a tactical decision.

(Punctuation and footnotes omitted.) *Smith v. State*, 275 Ga. 261, 263

---

[2] See *In the Matter of Duru*, 272 Ga. 447 (531 SE2d 357) (2000).

(564 SE2d 441) (2002). Accordingly, this factor "must be weighed as a 'relatively benign' consideration against the State." (Footnote omitted.) Id. at 263.

c. *Defendant's Assertion of His Right to Speedy Trial.*

Williams concedes that he did not assert his right to a speedy trial until 26 months after the filing of the indictment. This delay in asserting his right must be weighed against Williams. *Boseman v. State*, 263 Ga. at 733. See also *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001); *Perry v. Mitchell*, 253 Ga. 593, 595 (322 SE2d 273) (1984).

d. *Prejudice to Defendant.*

In evaluating the final factor from *Barker v. Wingo* — prejudice to the defendant —, we note:

> we consider three interests which the speedy trial right is designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and, most importantly, limiting the possibility that the defense will be impaired. [Cit.]

*Nelloms v. State*, 274 Ga. at 181. Here, the record indicates that Williams has been free on bail so there has been no oppressive pretrial incarceration; furthermore, "he has not made a showing of any specific anxiety or concern [to] balance this factor in his favor." Id. Moreover, although Williams has asserted general claims of prejudice, he has not demonstrated any specific prejudice to the defense. *Johnson v. State*, 268 Ga. 416, 418 (2) (490 SE2d 91) (1997).

Balancing all of these factors, we conclude that the superior court did not abuse its discretion in ruling that Williams could not prevail on his claim that he was denied his constitutional right to a speedy trial.

*Judgment affirmed. Mikell, J., concurs. Blackburn, P. J., concurs and concurs specially.*

BLACKBURN, Presiding Judge, concurring and concurring specially.

I fully concur in this Sixth Amendment of the Federal Constitution speedy trial denial case. I write separately to address our failure to follow U. S. Supreme Court precedent in *United States v. MacDonald*[3] on the issue of pre-trial direct appeal on speedy trial denials based on alleged Sixth Amendment federal constitutional violations as opposed to such claims which are based on OCGA § 17-7-170, Georgia's statutory speedy trial demand statute. I do not believe that

---

[3] *United States v. MacDonald*, 435 U. S. 850 (98 SC 1547, 56 LE2d 18) (1978).

the 1978 U. S. Supreme Court holding in *MacDonald*, supra, permits a right to a pre-trial direct appeal on an alleged denial of a Sixth Amendment speedy trial demand. The holdings of the U. S. Supreme Court on federal constitutional questions are binding on all courts.

As Justice Gregory made clear in the 1985 case, *Hubbard v. State*,[4] citing *Smith v. State*[5] and *Patterson v. State*,[6] because of the express language of the statute, a defendant stands acquitted as a matter of law when the State fails to comply with a statutory speedy trial demand under OCGA § 17-7-170. This is so because double jeopardy rights are implicated in a statutory speedy trial denial. Therefore, unlike Sixth Amendment speedy trial denials, such a defendant is entitled to full double jeopardy protection (Fifth Amendment, U. S. Constitution) against the ordeal of the trial itself, because the statute provides that on violation of his rights under the statute, the defendant stands acquitted. Thus, a pre-trial direct appeal is appropriate in such a case. In an OCGA § 17-7-170 claim, the defendant is saying, " 'I may not now be tried because the time during which I must have been placed on trial has passed.' " *Hubbard*, supra at 695.

This is not the case in Sixth Amendment speedy trial claims as discussed in *MacDonald*, supra, and *Barker v. Wingo*,[7] for which there is no pre-trial right of direct appeal. We note that *Hubbard* does not address the 1978 ruling of the U. S. Supreme Court in *Mac-Donald*, that pre-trial rights to appeal do not apply in alleged Sixth Amendment speedy trial denials under the Federal Constitution. It was unnecessary to do so because the distinction between a Georgia statutory speedy trial denial and a Federal Sixth Amendment speedy trial denial, under existing U. S. Supreme Court case law was clear at the time *Hubbard* was issued in 1985. Double jeopardy protections were not implicated in Sixth Amendment speedy trial denial cases as was clear under *Barker*, supra, 1972, and *MacDonald*, supra, 1978. In *MacDonald*, supra, a unanimous U. S. Supreme Court, in reversing the Fourth Circuit Court of Appeals, held that a defendant, before trial, could not appeal a federal district court's order denying his motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial, since (1) such pre-trial order lacked the finality traditionally considered indispensable to appellate review and did not represent a complete, formal, and final rejection by the trial court of the defendant's claim, (2) the order was not collateral to, and separable from, the principal issue at the impending trial which was whether the accused was guilty of the

---

[4] *Hubbard v. State*, 254 Ga. 694 (333 SE2d 827) (1985).
[5] *Smith v. State*, 169 Ga. App. 251 (312 SE2d 375) (1983).
[6] *Patterson v. State*, 248 Ga. 875 (287 SE2d 7) (1982).
[7] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

offense charged, (3) a speedy trial claim was not sufficiently independent of the outcome of the trial to warrant pre-trial appellate review, and (4) the order did not involve a right which would be lost if review had to await final judgment.

In the following post-*Hubbard* cases, *Thomas v. State*,[8] *Brannen v. State*,[9] *Boseman v. State*,[10] and *Boulton v. State*,[11] no statutory speedy trial violations under OCGA § 17-7-170 claims were involved. Unlike *Hubbard* each of these cases involved federal constitutional Sixth Amendment speedy trial violations. By a footnote citation to *Hubbard*, supra, a 1985 statutory speedy trial case, which therefore included no Sixth Amendment speedy trial case, and without a *MacDonald* Sixth Amendment speedy trial analysis, each of these cases applied the statutory speedy trial pre-trial direct appeal right to Sixth Amendment speedy trial violations. None of these cases was based on OCGA § 17-7-170 claims as was *Hubbard*, and no *MacDonald* Sixth Amendment analysis was made in any of these cases.

In *Callaway v. State*,[12] an alleged Sixth Amendment speedy trial denial case, this Court held that the defendant was not entitled to a pre-trial direct appeal, except as authorized under the provisions of OCGA § 5-6-34 (b), which requires a certificate of immediate review by the trial judge.

The Supreme Court of Georgia subsequently reversed our decision in *Callaway*. In doing so, the Supreme Court of Georgia held:

> [W]e cannot see any persuasive rationale for departing from settled precedent as to the applicable methods of pre-trial appeal and creating a distinction between constitutional and statutory speedy trial rulings. The statutory provision is obviously analogous in its purpose to the constitutional right to a speedy trial. *Ould v. State*.[13] As the concept of double jeopardy is closely implicated in both provisions, a defendant may directly appeal from the pre-trial denial of either a constitutional or statutory speedy trial claim. *Hubbard v. State*, supra at 695; *Ould v. State*, supra at 55 (1).

*Callaway v. State*.[14]

---

[8] *Thomas v. State*, 274 Ga. 492, n. 1 (555 SE2d 693) (2001).
[9] *Brannen v. State*, 274 Ga. 454, 455, n. 1 (553 SE2d 813) (2001).
[10] *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994).
[11] *Boulton v. State*, Case No. S00C1510, 2000 Ga. LEXIS 800 (October 20, 2000).
[12] *Callaway v. State*, 251 Ga. App. 11 (553 SE2d 314) (2001).
[13] *Ould v. State*, 186 Ga. App. 55 (1) (366 SE2d 392) (1988), a case which totally ignores the U. S. Supreme Court's 1978 ruling in *MacDonald*, which holds that a Sixth Amendment speedy trial violation does not authorize a pre-trial direct appeal.
[14] *Callaway v. State*, 275 Ga. 332-333 (567 SE2d 13) (2002).

In 1978, the U. S. Supreme Court provided a four-part analysis of Sixth Amendment speedy trial denial appeal rights under the Federal Constitution which clearly indicated that no double jeopardy rights were implicated therein and held that no pre-trial appeal rights exist in such a case. In *Callaway*, our Supreme Court has held otherwise. While this Court is bound by the decisions of both the U. S. Supreme Court and those of the Supreme Court of Georgia, under the Georgia Constitution, we must defer to the holdings of the Supreme Court of Georgia, where they have established law, whether or not they have considered holdings of the U. S. Supreme Court. But for this requirement, I would follow the holding of *MacDonald* in this case.

DECIDED MARCH 14, 2003.

*Dwight L. Thomas, Jo Ann Fields,* for appellant.
*Paul L. Howard, Jr., District Attorney, Anne E. Green, Assistant District Attorney,* for appellee.