A03A1715. MAYFIELD v. THE STATE.
(593 SE2d 851)

BLACKBURN, Presiding Judge.

Following the trial court's denial of his motion to dismiss, James Mayfield appeals, contending that: (1) he was denied his Sixth Amendment right to a speedy trial and (2) he was denied his procedural due process rights based on prejudicial delay. For the reasons set forth below, we affirm.

The record shows that, on November 19, 1997, an arrest warrant was issued for Mayfield for the shooting of Kym Johnson. The following day, Mayfield spoke with Tyra Banks, a friend of his, who told him that the police were looking for him regarding the shooting. After the warrant was issued, the State was unable to locate Mayfield, who was later incarcerated in Clayton County in early 1998 for a probation violation. When Clayton County discovered the outstanding warrant against Mayfield, he was transferred in May 1999 to Franklin County, where he remained incarcerated on the shooting charge until he posted bail in November 1999. On March 15, 2000, Mayfield was indicted for aggravated assault,[1] burglary,[2] and aggravated battery.[3] Mayfield's case was placed on the calendar call on December 8, 2000, but, at Mayfield's request, his trial was delayed until the following term so that he could obtain counsel to represent him.[4]

After Mayfield obtained counsel, his case was again called in May 2001, and a trial date was set for June 11, 2001. Mayfield, however, failed to appear in court on either date, and a bench warrant was issued for his arrest. On the scheduled date for the trial, May-

---

[15] OCGA § 42-8-60 (b).
[1] OCGA § 16-5-21.
[2] OCGA § 16-7-1.
[3] OCGA § 16-5-24.
[4] The record indicates that Mayfield reported to court late on this date.

field's counsel asked to withdraw from the case and was later allowed to do so. In his motion to withdraw, filed with the trial court on June 28, 2001, Mayfield's counsel included Mayfield's current mailing address, although Mayfield never satisfied his admitted responsibility of keeping the State apprised of his whereabouts at any time during his prosecution, despite the fact that his attorney's withdrawal notice indicated that Mayfield had been explicitly informed of this duty.

Because an outstanding bench warrant for Mayfield's arrest had been issued, on October 3, 2001, the State requested that Mayfield's case be placed on the inactive docket until Mayfield was found and arrested. Later, in February 2003, Mayfield was stopped for a traffic offense, and, after his record was checked, he was arrested on the outstanding bench warrant against him. That same month, Mayfield employed new trial counsel, and, on March 21, 2003, three days before his rescheduled trial date, Mayfield filed a motion to dismiss, contending that: (1) he was denied his Sixth Amendment right to a speedy trial and (2) he was denied his procedural due process rights based on prejudicial delay. The trial court denied this motion, and Mayfield appeals.

As an initial matter, we must point out that:

> This case is before us on a pre-trial appeal based on the holdings of the Supreme Court of Georgia. We note our failure to follow United States Supreme Court precedent in *United States v. MacDonald*[5] on the issue of pre-trial direct appeal on speedy trial denials based on alleged Sixth Amendment federal constitutional violations as opposed to such claims which are based on OCGA § 17-7-170, Georgia's statutory speedy trial demand statute. We do not believe that the 1978 U. S. Supreme Court holding in *MacDonald*, supra, permits a pre-trial direct appeal on an alleged denial of a Sixth Amendment speedy trial demand. The holdings of the U. S. Supreme Court on federal constitutional questions are binding on all courts.
>
> As Justice Gregory made clear in the 1985 case, *Hubbard v. State*,[6] citing *Smith v. State*[7] and *Patterson v. State*,[8] because of the express language of the statute, a defendant stands acquitted as a matter of law when the State fails to comply with a statutory speedy trial demand under OCGA

---

[5] *United States v. MacDonald*, 435 U. S. 850 (98 SC 1547, 56 LE2d 18) (1978).
[6] *Hubbard v. State*, 254 Ga. 694 (333 SE2d 827) (1985).
[7] *Smith v. State*, 169 Ga. App. 251 (312 SE2d 375) (1983).
[8] *Patterson v. State*, 248 Ga. 875 (287 SE2d 7) (1982).

§ 17-7-170. This is so because double jeopardy rights are implicated in a statutory speedy trial denial. Therefore, unlike Sixth Amendment speedy trial denials, such a defendant is entitled to full double jeopardy protection (Fifth Amendment, U. S. Constitution) against the ordeal of the trial itself, because the statute provides that on violation of his rights under the statute, the defendant stands acquitted. Thus, a pre-trial direct appeal is appropriate in such a case. In an OCGA § 17-7-170 claim, the defendant is saying, " 'I may not now be tried because the time during which I must have been placed on trial has passed.' " *Hubbard*, supra at 695.

This is not the case in Sixth Amendment speedy trial claims as discussed in *MacDonald*, supra, and *Barker v. Wingo*,[9] for which there is no pre-trial right of direct appeal. We note that *Hubbard* does not address the 1978 ruling of the U. S. Supreme Court in *MacDonald*, that pre-trial rights to appeal do not apply in alleged Sixth Amendment speedy trial denials under the Federal Constitution. It was unnecessary to do so because the distinction between a Georgia statutory speedy trial denial and a Federal Sixth Amendment speedy trial denial, under existing U. S. Supreme Court case law was clear at the time *Hubbard* was issued in 1985. Double jeopardy protections were not implicated in Sixth Amendment speedy trial denial cases as was clear under *Barker*, supra, 1972, and *MacDonald*, supra, 1978. In *MacDonald*, supra, a unanimous U. S. Supreme Court, in reversing the Fourth Circuit Court of Appeals, held that a defendant, before trial, could not appeal a federal district court's order denying his motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial, since (1) such pre-trial order lacked the finality traditionally considered indispensable to appellate review and did not represent a complete, formal, and final rejection by the trial court of the defendant's claim, (2) the order was not collateral to, and separable from, the principal issue at the impending trial which was whether the accused was guilty of the offense charged, (3) a speedy trial claim was not sufficiently independent of the outcome of the trial to warrant pre-trial appellate review, and (4) the order did not involve a right which would be lost if review had to await final judgment.

---

[9] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

In the following post-*Hubbard* cases, *Thomas v. State*,[10] *Brannen v. State*,[11] *Boseman v. State*,[12] and *Boulton v. State*,[13] no statutory speedy trial violations under OCGA § 17-7-170 claims were involved. Unlike *Hubbard*, each of these cases involved federal constitutional Sixth Amendment speedy trial violations. By a footnote citation to *Hubbard*, supra, a 1985 statutory speedy trial case, which therefore included no Sixth Amendment speedy trial case, and without a *MacDonald* Sixth Amendment speedy trial analysis, each of these cases applied the statutory speedy trial pre-trial direct appeal right to Sixth Amendment speedy trial violations. None of these cases was based on OCGA § 17-7-170 claims as was *Hubbard*, and no *MacDonald* Sixth Amendment analysis was made in any of these cases.

In *Callaway v. State*,[14] an alleged Sixth Amendment speedy trial denial case, this Court held that the defendant was not entitled to a pre-trial direct appeal, except as authorized under the provisions of OCGA § 5-6-34 (b), which requires a certificate of immediate review by the trial judge.

The Supreme Court of Georgia subsequently reversed our decision in *Callaway*. In doing so, the Supreme Court of Georgia held: (W)e cannot see any persuasive rationale for departing from settled precedent as to the applicable methods of pre-trial appeal and creating a distinction between constitutional and statutory speedy trial rulings. The statutory provision is obviously analogous in its purpose to the constitutional right to a speedy trial. *Ould v. State*[15] [(a case which totally ignores the U. S. Supreme Court's 1978 ruling in *MacDonald*, which holds that a Sixth Amendment speedy trial violation does not authorize a pre-trial direct appeal)]. As the concept of double jeopardy is closely implicated in both provisions, a defendant may directly appeal from the pre-trial denial of either a constitutional or statutory speedy trial claim. *Hubbard v. State*, supra at 695; *Ould v. State*, supra at 55 (1). *Callaway v. State*.[16]

In 1978, the U. S. Supreme Court provided a four-part analysis of Sixth Amendment speedy trial denial appeal rights under the Federal Constitution which clearly indi-

---

[10] *Thomas v. State*, 274 Ga. 492, n. 1 (555 SE2d 693) (2001).

[11] *Brannen v. State*, 274 Ga. 454, 455, n. 1 (553 SE2d 813) (2001).

[12] *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994).

[13] *Boulton v. State*, Case No. S00C1510, 2000 Ga. LEXIS 800 (October 20, 2000).

[14] *Callaway v. State*, 251 Ga. App. 11 (553 SE2d 314) (2001).

[15] *Ould v. State*, 186 Ga. App. 55 (1) (366 SE2d 392) (1988).

[16] *Callaway v. State*, 275 Ga. 332, 333 (567 SE2d 13) (2002).

cated that no double jeopardy rights were implicated therein and held that no pre-trial appeal rights exist in such a case. In *Callaway*, our Supreme Court has held otherwise. While this Court is bound by the decisions of both the U. S. Supreme Court and those of the Supreme Court of Georgia, under the Georgia Constitution, we must defer to the holdings of the Supreme Court of Georgia, where they have established law, whether or not they have considered holdings of the U. S. Supreme Court. But for this requirement, we would follow the holding of *MacDonald* in this case and reject this premature appeal. Being required to address this appeal, we find as follows.

*Smith v. State.*[17]

1. Mayfield contends that the trial court erred by denying his motion to dismiss because he was denied his Sixth Amendment right to a speedy trial. "The trial court's decision with regard to such motion[, however,] will not be reversed unless an abuse of discretion is shown." *Callaway v. State*;[18] see also *Brown v. State*;[19] *Williams v. State*.[20] No abuse of discretion has occurred in this case.

> In *Barker v. Wingo*, [supra], the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated[:] (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant. As to the prejudice factor, there are three interests which the speedy trial right was designed to protect, the last being the most important: (a) to prevent oppressive pre-trial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired.

(Citations and punctuation omitted.) *Boseman*, supra at 731-732 (1).

---

[17] *Smith v. State*, 260 Ga. App. 403-405 (579 SE2d 829) (2003).
[18] *Callaway v. State*, 258 Ga. App. 118, 121 (572 SE2d 751) (2002).
[19] *Brown v. State*, 264 Ga. 803, 805 (2) (450 SE2d 821) (1994).
[20] *Williams v. State*, 260 Ga. App. 290, 291 (581 SE2d 326) (2003).

*Length of delay*: The first factor which must be considered is the length of the delay in trying a defendant. The speedy trial right attaches "at the time of arrest or when formal charges are brought, whichever is earlier." *Boseman*, supra at 731 (1). Thus, in this case, Mayfield's speedy trial rights began to run on May 10, 1999, the date that he was arrested.

The delay factor bears on the speedy trial analysis in two ways:

> First, a court must determine whether the delay has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, the accused cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the delay passes this threshold test of presumptive prejudice, then the *Barker* inquiry is triggered. The delay is then considered a second time by factoring it into the prejudice prong of the *Barker* analysis, with the presumption that pretrial delay has prejudiced the accused intensifying over time.

(Citation and punctuation omitted.) *Boseman*, supra at 732 (1) (a).

As a delay of one year or more has previously been found to raise a presumption of prejudice, that presumption is present in this case, and the remaining *Barker* factors must be considered. See, e.g., *Coney v. State*;[21] *Doggett v. United States*.[22]

*Reason for delay*: "At the outset, we note that nowhere in the record does it show that the State has deliberately attempted to delay the trial in order to hamper the defense, a serious abuse that would be weighted against the State." *Boseman*, supra at 732 (1) (b). The record indicates that an arrest warrant was issued for Mayfield on November 19, 1997, but his whereabouts were unknown and he was not found and arrested until May 10, 1999. Thereafter, due to Mayfield's request for a continuance at the December 8, 2000 calendar call, his case was scheduled for a trial date of June 11, 2001. Mayfield, however, failed to appear in court on that date. A bench warrant was issued for his arrest, and, despite the fact that Mayfield's withdrawing attorney informed him of his duty to keep the court apprised of his whereabouts, Mayfield wholly failed to do so. After the State finally located Mayfield in February 2003, he was brought to trial the following month.

Under these facts, we cannot, as Mayfield contends, hold the State responsible for the delay in bringing him to trial. To the con-

---

[21] *Coney v. State*, 259 Ga. App. 525, 526 (578 SE2d 193) (2003).
[22] *Doggett v. United States*, 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992).

trary, the record supports a conclusion that the delay was largely due to Mayfield. And, even if we were to accept Mayfield's arguments that the State contributed to the delay in his trial by failing to properly notify him of his June 11, 2001 trial date or track him down and promptly arrest him thereafter, the result does not change, as any negligence by the State in bringing Mayfield to trial is outweighed by his own actions. The record is clear that, despite his withdrawing attorney's notice that he keep the court informed of his whereabouts, Mayfield failed to contact the court in any way, even though he had an outstanding arrest warrant against him.

*Assertion of right*: "Because a defendant may benefit by delaying a trial, this Court has recognized that a defendant has a responsibility to assert [his] right to a speedy trial." *Jernigan v. State*.[23] The record clearly shows that Mayfield asserted his right to a speedy trial for the first time in his motion to dismiss. Mayfield's "delay in asserting [his] right is a factor we must weigh heavily against [him]." *Haisman v. State*.[24]

*Prejudice to the defendant*: The three factors which must be considered here are (i) oppressive pre-trial incarceration; (ii) anxiety and concern of the accused; and (iii) impairment of the defense. With regard to the first two factors, the record indicates that "[Mayfield] has been free on bail so there has been no oppressive pretrial incarceration[; furthermore,] he has not made a showing of any specific anxiety or concern [to] balance this factor in his favor." *Nelloms v. State*.[25]

With regard to the third factor, impairment of the defense, Mayfield maintains that, due to the passage of time, his alibi defense that he was at home with his parents at the time of the crime has been undermined. Specifically, he argues that: (1) he cannot locate a specific witness, Banks, and (2) his family can no longer recall with complete accuracy whether he was at home on the night of the crime. Neither of these contentions holds merit.

With regard to Banks, Mayfield contends that she would testify that, on the night of the incident, police visited her home just outside Franklin County in search of Mayfield. Allegedly, Banks would further testify that she called Mayfield the following day to inform him that the police were looking for him with regard to the incident. Contrary to Mayfield's arguments, this testimony, if given, would not support his alibi, since Banks did not contact him until the day *after* the shooting. Moreover, Banks' testimony would establish that, on the day following the crime, the police were concerned about his

---

[23] *Jernigan v. State*, 239 Ga. App. 65, 67 (517 SE2d 370) (1999).
[24] *Haisman v. State*, 242 Ga. 896, 898 (2) (252 SE2d 397) (1979).
[25] *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001).

whereabouts and he could have taken steps at that time to ensure that his family took note of whether he was at home on the night of the crime. Accordingly, contrary to Mayfield's contentions, Banks' alleged absence does not establish the prejudice necessary to support his motion to dismiss.

With regard to his family's inability to remember whether Mayfield was at home on the night of the crime, as stated above, Mayfield was immediately given notice of the importance of the night in question by Banks' phone call, and he could have taken steps to ensure that his family made note of his whereabouts on the night of the crime. In addition, we further note that Mayfield's right to a speedy trial did not begin to run until the date of his arrest, May 10, 1999, and Mayfield asserts that, by that time, his family's memory had already been impaired. As any impairment had already occurred prior to the time Mayfield's speedy trial rights attached, Mayfield cannot show that this pre-existing impairment harmed him by any delay occurring after May 10, 1999.

2. Mayfield contends that his due process rights were violated. "However, [Mayfield] did not show that the delay caused actual prejudice to the defense and that it was the product of a deliberate action which was designed by the prosecution to gain a tactical advantage. *Wooten v. State*."[26] (Footnote and emphasis omitted.) *Henderson v. State*.[27] As such, Mayfield's enumeration lacks merit.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED DECEMBER 4, 2003 — ■■■■■■■■

*Harvey S. Wasserman,* for appellant.

*Robert W. Lavender, District Attorney, Richard K. Bridgeman, Assistant District Attorney,* for appellee.

---

[26] *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993).

[27] *Henderson v. State*, 272 Ga. 621, 623 (6) (532 SE2d 398) (2000).