## A04A0430. THE STATE v. BYRD.
### (596 SE2d 426)

ELDRIDGE, Judge.

Coquitta Byrd was indicted for aggravated assault with a deadly weapon, which charge arose after Byrd allegedly stabbed a girl in the neck with a knife. The State appeals from both an order of the Superior Court of Fulton County granting Byrd's motion to dismiss based on a violation of her constitutional right to a speedy trial and an order of that same court granting Byrd's motion to suppress the identification testimony of the victim. Finding no basis in fact and law for either of the trial court's judgments, we reverse.

Because the Sixth Amendment right to a speedy trial is "a constitutional right the deprivation of which can work to the advantage of the defendant, a trial court's ruling on the subject must be carefully scrutinized."[1] In that regard, the record before us is small, and the transcript of the hearing on the motion to dismiss contains no evidence, only oral argument. This makes scrutiny difficult, but all the more important. What evidence of record there is shows that, after the stabbing incident in August 1999, a warrant was issued for Byrd's arrest. Byrd turned herself in to the police a year later, August 29, 2000, and was arrested. She made bond two days later and has remained out on bond to the present. On December 22, 2000, four months after her arrest, Byrd was indicted.

Approximately two months later, on March 9, 2001, attorney Rodney Zell made an entry of appearance on Byrd's behalf. The case was placed on a trial calendar for June 15, 2001. For an unknown cause, the case was reset. Zell then filed for a leave of absence that encompassed weeks in both July and August 2001. Thereafter, Zell moved to withdraw as Byrd's counsel, which motion was granted by the court on September 20, 2001.

Daryl Queen with the Fulton County Conflict Defender's office filed an entry of appearance on September 25, 2001. Two months later, on November 26, 2001, Queen filed an ex parte motion for a psychiatric examination, requesting that Byrd's competence to stand trial be evaluated and contending that her mental condition would "be a significant fact at trial." The court granted the motion on November 28, 2001. The results of that evaluation are not before us; however, Byrd's case was placed on the January 3, 2002 calendar.

One week later, Susan Wardell with the Fulton County Conflict Defender's Office replaced Queen and filed an entry of appearance. Byrd's case was placed on the February 15, 2002 calendar. Wardell

---

[1] *State v. Johnson*, 274 Ga. 511, 515 (555 SE2d 710) (2001) (Benham, J., dissenting).

prepared an order to secure Byrd's psychiatric records from Grady Hospital, which order was signed by the trial court on January 28, 2002. In April 2002, Byrd's case was placed on a calendar for June 13, 2002. The case was again reset. Finally, on November 21, 2002, Wardell filed a special "plea of incompetence to stand trial" pursuant to OCGA § 17-7-130; therein, she asserted that Byrd had been "unable to assist in the defense of her case." That same day, Wardell filed the instant "motion to dismiss for violation of defendant's right to speedy trial" in which she asserted that a demand for speedy trial had not been filed earlier because the defense "believ[ed] that the case would be better resolved through negotiation."

Following oral argument, the trial court granted Byrd's motion to dismiss. Based upon assertions made by counsel during oral argument, the court found that "defendant has established that, through delay, destruction of the crime scene, missing witnesses and prejudice to her case, she has established delay which violates her right to a speedy trial." *Held*:

1. The seminal case for evaluating an alleged violation of a defendant's constitutional right to a speedy trial is *Barker v. Wingo*.[2] The issue is whether the trial court abused its discretion in balancing the four factors set forth in *Barker v. Wingo*, supra, which are: (1) the length of the delay; (2) the reason for the delay and whether this is attributable to the defendant or the State; (3) the timeliness of the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant.[3] In this balancing process, it is axiomatic that delay of trial must have been caused by acts of the State; "if delay is attributable to the defendant, then his waiver [of the speedy trial right] may be given effect under standard waiver doctrine."[4]

Before us is a transcript of the oral argument upon which the trial court relied in reaching its decision. To demonstrate that reliance on such argument was not an abuse of the court's discretion, the factual assertions of counsel must be supported by evidence of record and the law must have been properly applied to these facts. So viewed, it appears Byrd asserted in oral argument that unconstitutional delay occurred between the incident date and her indictment on the offense, because Byrd "was indicted in December 2000. This happened in 8/27/99." While this averment may be factually accurate, it provides no legal basis for finding a speedy trial violation. This is so because Byrd was not arrested on the offense until August 29, 2000,

---

[2] 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

[3] *State v. Johnson*, supra at 512.

[4] *Barker v. Wingo*, supra at 529; accord *Abiff v. State*, 260 Ga. 434, 435 (2) (396 SE2d 483) (1990).

and the speedy trial right does not attach before arrest.[5] Thus, no delay of trial is demonstrated by the year between the incident date and Byrd's August 29, 2000 arrest.[6] And, considering Byrd was out on bond, her subsequent indictment four months after arrest appears timely.

Byrd also claimed unconstitutional delay in the appointment of counsel; to the trial court she maintained, "nine months later [(after indictment)] she was first appointed counsel." As a matter of fact, however, the record does not support this assertion; Byrd had legal representation approximately two months after indictment, when Rodney Zell filed his entry of appearance.

The transcript of oral argument further shows that Byrd's remaining assertions did not address trial delay. Indeed, the preponderance of defense counsel's oral argument went to the contention that Byrd's prosecution is inherently unfair because she is innocent:

> all these things don't add up at all to my client. . . . My client didn't do this. . . . And I believe she's been severely prejudiced by the whole process, and I feel that the case should be dismissed. That's the argument that I have to make today. . . . The DA didn't bother to indict the person who is originally the suspect. And when I asked them to at least indict the other woman, there was just no response. . . . The issue was that the wrong person was indicted. . . . I didn't get — nobody would reduce charges. . . . My client is willing to plead, but it seems excessive to have her plead to an aggravated assault when the perpetrator who committed the assault was never indicted. For that reason, we're asking the court to dismiss the charges against Ms. Byrd.

We make no comment on the equitable merits of this argument; we find only that Byrd's protestations of innocence provide no legal basis for concluding her constitutional right to a speedy trial was violated.

The State maintained during oral argument that the failure to try the case was caused by "the defense saying that they needed [mental services] placement, psychiatric is still pending, and that's what delayed the case." The prosecutor listed the dates on which Byrd's case had been placed on the calendar and stated that, "The defense was not ready"; that "they were trying to get psychiatric

---

[5] *United States v. Marion*, 404 U. S. 307, 320-322 (92 SC 455, 30 LE2d 468) (1971); *Dillingham v. United States*, 423 U. S. 64-65 (96 SC 303, 46 LE2d 205) (1975) (per curiam).

[6] There is neither an allegation nor a showing that Byrd's arrest was deliberately delayed by the prosecution in order to gain a tactical advantage, so as to raise due process concerns. See *Roebuck v. State*, 277 Ga. 200, 204-205 (4) (586 SE2d 651) (2003).

issues for Ms. Byrd resolved." Defense counsel admitted in the motion to dismiss that no demand for trial had been filed because the defense wanted the case resolved through negotiation. At the hearing, defense counsel conceded that "for a long while there we're looking for a placement, we're looking for mental health service"; that the case was not closely investigated by her office before the case was given to her "so it was given to me as a mental health case. Can you do something with her mental health issues and see if you can find her a placement in the community." Defense counsel advised the court during oral argument that Byrd had been hospitalized 16 times from the time counsel filed her entry of appearance on January 10, 2002, through the motion hearing date on June 13, 2003. The facts of record establish that Byrd's mental ability to stand trial was put at issue, culminating with the filing of a special plea of incompetence to stand trial in November 2002.

We find that the State's acquiescence in Byrd's desired resolution of mental health services placement and the subsequent delay of trial related to the defense's attempts to attain such resolution will not permit Byrd to legitimately claim that the State violated her right to a speedy trial. On the record before us, we cannot ascertain any delay caused by the actions of the State. After indictment, Byrd was represented by three different attorneys, which in itself causes delay of trial as each becomes familiar with the case and its posture. Byrd's case was repeatedly placed on the calendar for resolution, and the defense conceded that mental health "placement" was the sought-after result, not trial. In addition, Byrd's 16 hospitalizations as represented by defense counsel perforce engendered delay. And, finally, it appears that resolution of the case was forestalled because current defense counsel felt Byrd had been unjustly indicted. Indeed, Byrd has not cited any action by the prosecution that created a delay in the trial of her case; nor, to this day, has she ever asserted that she was ready for trial and wanted same.[7]

Moreover, in the absence of any delay caused by the State, Byrd's additional assertions that "we've lost our witnesses; we've lost our scene" and the trial court's reliance thereon to show prejudice to the defense do not demonstrate that the government violated Byrd's right to a speedy trial.[8] Accordingly, we find the trial court abused its discretion by granting Byrd's motion to dismiss.

2. On Byrd's motion to suppress identification, the trial court issued an order finding as a matter of fact that "in October, 2002, the defendant appeared in court, at which time the victim saw the

---

[7] See *Mayfield v. State*, 264 Ga. App. 551 (593 SE2d 851) (2003).
[8] Id.

defendant and identified her for the first time." The court found this identification procedure improperly suggestive and suppressed the victim's identification of Byrd. We, however, find no evidence of record in support of the trial court's factual basis for suppression. During oral argument, Byrd's defense attorney represented that the identification process recounted in the court's order had occurred; however, Byrd's defense attorney was not present during such identification, and counsel candidly admitted to the trial court that her factual representations were based on what was told to her by another:

> I cannot say first hand that I saw what happened, but my understanding was it amounted to, is that the one, or something like that. . . . Something along the lines of does that look like the person, which is more like a showup than any kind of valid identification. . . . I cannot, I was not standing here, but Jan Willy was. She's the deputy director of our agency. She said that definitely should be the basis of a motion to suppress. . . . I can't say to what extent [Byrd] was pointed out.

No competent evidence was introduced on this issue. This Court will not uphold the suppression of identification testimony based upon a hearsay recounting that "something along the lines" of an improper showup occurred, "or something like that."

Further, the prosecutor informed the trial court that, prior to the incident, the victim knew both Byrd and her cousin, Reneka, i.e., the "other woman" defense counsel wanted to see indicted as outlined in Division 1. This fact is supported in the record by the police report wherein four days after the offense, the victim advised the investigator that "during the fight 'Tweet' [(Byrd)] gave the knife to 'Pooh' [(Reneka)] and then she stabbed/cut her with the knife." While there appears confusion as to who actually wielded the knife, the above statement from the victim supports the prosecutor's assertion during the hearing that the victim was familiar with both Byrd and Reneka prior to the disputed identification procedure. It also appears from the record, that the victim identified Byrd in a photographic lineup prior to the complained-of identification.[9] "[E]ven if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin."[10] In light of these facts, and in the absence of any competent evidence to support Byrd's contention that an unduly suggestive identification even occurred, it was error for the

---

[9] *Wilson v. State*, 275 Ga. 53, 59 (3) (562 SE2d 164) (2002).
[10] (Citation and punctuation omitted.) Id.

trial court to grant the motion to suppress.

*Judgment reversed. Adams, J., concurs. Ruffin, P. J., concurs in judgment only.*

DECIDED MARCH 4, 2004.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Maura F. Krause, Assistant District Attorneys*, for appellant.

*Susan B. Wardell*, for appellee.