## A01A1847. CALLAWAY v. THE STATE.
(553 SE2d 314)

ELDRIDGE, Judge.

Dextrell Callaway filed a direct appeal from an order denying his plea in bar and demand for acquittal based on the denial of his constitutional right to a speedy trial under the analysis established in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). He cites a physical precedent, *Ould v. State*, 186 Ga. App. 55 (366 SE2d 392) (1988), as authority for the proposition that a direct appeal is available under these circumstances. Because *Ould* is not a binding precedent, because we find that the reasoning offered therein does not withstand careful scrutiny, and because we find no other legitimate basis to exercise appellate jurisdiction at this time, we conclude that Callaway's direct appeal must be dismissed as premature.

The defendant in *Ould v. State* moved for a discharge and acquittal on the day before his scheduled trial. He appealed from the denial of that motion. The *Ould* court devoted its first Division to the matter of jurisdiction, stating as follows:

> Although the case is primarily interlocutory in nature, a direct appeal is permissible because it indirectly implicates the issue of double jeopardy resulting from the failure to grant an accused a speedy trial. See *Hubbard v. State*, 254 Ga. 694 (333 SE2d 827) (1985), allowing interlocutory appeal from denial of a motion to dismiss based on the statutory demand which as to purpose is analogous to the federal constitutional right to a speedy trial. *Cook v. State*, 183 Ga. App. 720 (1) (359 SE2d 716) (1987) follows *Hubbard*, and *Smith v. State*, 169 Ga. App. 251 (1) (312 SE2d 375) (1983) precedes it. The reasoning in these cases applies here and recommends the same result, which we adopt. Thus, a direct appeal lies from a denial of discharge based on an alleged denial of a constitutional right to a speedy trial.

Id. at 55-56 (1). A careful reading of the *Smith, Hubbard*, and *Cook* cases, however, reveals no support for the proposition that a claimed failure to grant an accused a speedy trial, when made outside the context of a statutory demand for trial under OCGA § 17-7-170, "indirectly implicates the issue of double jeopardy."

As our opinion in *Smith v. State*, supra, makes clear, any analogy

between the denial of a plea of double jeopardy and a plea in bar based on OCGA § 17-7-170 is clearly *not* rooted in any functional similarity between the substantive considerations underlying the two motions.

> A plea of double jeopardy is premised upon the alleged violation of an individual's guarantee against being *twice put to trial* for the same offense. On the other hand, an OCGA § 17-7-170 motion proceeds on the theory that the defendant has *never* been put in jeopardy and tried for the crime charged. Under this view, it would follow that the denial of an OCGA § 17-7-170 motion does not constitute the denial of a plea of *double* jeopardy — there being no former trial — but is merely a determination that the state's previous failure to place the accused in jeopardy does not bar the state from so placing him in the future.

(Citations and punctuation omitted; emphasis in original.) 169 Ga. App. at 251-252 (1). The analogy between a double jeopardy plea and one based on OCGA § 17-7-170, as explained in *Smith*, lies in the demand statute's automatic acquittal function.

> Where a demand [under OCGA § 17-7-170] has been regularly made and allowed, and two regular terms of court are thereafter held, and the accused is not placed on trial, *no motion to acquit is necessary, but the discharge of the accused results automatically, by operation of law,* provided qualified juries were impaneled competent to try the case, and the failure to try is not due to the voluntary absence of the accused, or to some other conduct on the part of himself or his counsel. Thus, the denial of an OCGA § 17-7-170 motion does not constitute the trial court's refusal to grant the accused an acquittal and thereby terminate the original prosecution. Rather, the denial of an OCGA § 17-7-170 motion constitutes the trial court's determination that the prosecution has not *already* resulted in an automatic acquittal of the accused by operation of law. Therefore, to the extent that the denial of an OCGA § 17-7-170 motion allows the prosecution to proceed, it is an adjudication that the impending trial of the accused will not place him in jeopardy for the commission of a crime for which he has previously been acquitted. To this extent, the denial of an OCGA § 17-7-170 motion is — at the very least — in the nature of a ruling on the accused's double jeopardy rights. If the OCGA § 17-7-170 motion is erroneously denied, and the accused is subse-

> quently tried and convicted, the conviction will be reversed on double jeopardy grounds, but only after the accused has been forced to undergo a trial which never should have been held. Accordingly, the same "compelling reasons" which led the Supreme Court in *Patterson v. State*, [248 Ga. 875, 877 (287 SE2d 7) (1982)], to hold that the denial of a plea of double jeopardy is directly appealable, lead us to the same conclusion with regard to the denial of an OCGA § 17-7-170 motion. " '[If] a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.' [Cits.]" (Emphasis in original.) *Patterson v. State*, supra at 876.

(Citations and punctuation omitted; emphasis in original.) Id. at 252-253 (1).

Our analysis in *Smith* was approved by the Supreme Court in *Hubbard v. State*, supra. The Supreme Court correctly observed that "[i]n the absence of a right to a speedy trial the accused might suffer uncertainty, emotional stress, and the economic strain of a pending prosecution indefinitely. These values are of a magnitude similar to the values at stake in double jeopardy claims." 254 Ga. at 695. While acknowledging that the underlying values are of similar magnitude, the Supreme Court did not go further and state that all denials of motions for acquittal based on the accused's assertion that his or her right to a speedy trial has been denied should be directly appealable. On the contrary, the Supreme Court's decision in *Hubbard*, like this Court's decision in *Smith*, supra, is based squarely on the automatic acquittal feature of OCGA § 17-7-170.

> In double jeopardy claims the accused is saying, "I may not now be tried because I have previously been placed in jeopardy." In a claim based on OCGA § 17-7-170 the accused is saying, "I may not now be tried because the time during which I must have been placed on trial has passed." *The circumstances bearing on the right to appeal are analogous.* Therefore, we hold that the denial of a motion to dismiss *based upon OCGA § 17-7-170* is directly appealable under OCGA § 5-6-34 (a).

(Emphasis supplied.) Id.[1]

---

[1] It should be noted that the Supreme Court has on one occasion addressed the merits of a pre-trial direct appeal in a capital murder case based *solely* on the purported denial of

The circumstances bearing on the right to appeal in *Ould v. State* as well as in the present case are very different from those presented in appeals based on the rejection of double jeopardy claims. Defendant Callaway is not claiming that any further proceedings against him would be void because he has already been effectively acquitted as a matter of law or that the time during which he must have been tried has passed;[2] rather, Callaway's essential position in this appeal is that the trial court abused its discretion in failing to find that Callaway's constitutional right to a speedy trial has been violated. Accord *Thomas v. State*, 233 Ga. App. 224, 225 (2) (504 SE2d 59) (1998). We therefore conclude that appellate jurisdiction to consider Callaway's appeal, assuming it exists, may not be grounded on the reasoning applied in *Hubbard*, supra, and *Smith*, supra.

The remaining question is whether there nevertheless exists an appropriate basis to hear Callaway's appeal that is separate and distinct from the reasoning offered in *Ould v. State*, supra. The underlying mechanism allowing pre-trial direct appeals based on a plea of double jeopardy or on the failure of the State to comply with a demand for trial brought under OCGA § 17-7-170 is known as the "collateral order" exception to the final judgment rule. *Patterson v. State*, supra. "[T]he exception applies if the order: '(1) completely and conclusively resolves the issue appealed; (2) concerns an issue which is "substantially separate" from the basic issues presented in the complaint; and (3) would result in the loss of an important right and is "effectively unreviewable on appeal." (Cit.)' [Cit.]" *Johnson & Johnson v. Kaufman*, 226 Ga. App. 77, 79 (485 SE2d 525) (1997). The Supreme Court of the United States fully examined the relevant considerations bearing on this question in *United States v. MacDonald*,

---

the defendant's constitutional right to a speedy trial. *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994). Although *Boseman* does cite *Hubbard v. State*, supra, as authority for its assertion of jurisdiction, it does not follow that the Supreme Court, by that citation of authority alone, has made an affirmative determination that appellate jurisdiction to hear pre-trial appeals based on the denial of a defendant's right to a speedy trial should be extended beyond those cases in which the defendant is contending that he has already received an acquittal as a matter of law under OCGA § 17-7-170 or § 17-7-171. On the contrary, *Boseman* simply cites *Hubbard* as *direct authority* for its assertion of jurisdiction, without further acknowledging the underlying procedural distinctions between the two cases. We therefore conclude that the Supreme Court's assertion of jurisdiction in *Boseman* does not effect a binding expansion of the holding in *Hubbard*. See generally *Douglas v. Wages*, 271 Ga. 616, 617, n. 2 (523 SE2d 330) (1999); see also *Smith v. State*, 196 Ga. 595, 602 (27 SE2d 369) (1943) ("a decision is not an authority upon a question not considered by the court, though involved in a case decided. [Cits.]").

[2] A defendant in Callaway's position is precluded from arguing that the time during which he "must" have been tried has passed, since it is well settled that "the presumptive prejudice arising from delay 'cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria.' [Cit.]" *Boseman v. State*, supra at 732 (1) (a).

435 U. S. 850 (98 SC 1547, 56 LE2d 18) (1978). The Court specifically noted that

> [i]n sharp distinction to a denial of a motion to dismiss on double jeopardy grounds, a denial of a motion to dismiss on speedy trial grounds does not represent "a complete, formal and, in the trial court, a final rejection" of the defendant's claim. *Abney v. United States*, 431 U. S. [651, 659 (97 SC 2034, 52 LE2d 651) (1977)]. The resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. As is reflected in the decisions of this Court, most speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial.

435 U. S. at 858.

The reasoning in *MacDonald*, which we find persuasive, makes plain that an unfavorable ruling on a constitutional speedy trial claim possesses none of the characteristics enumerated in *Johnson & Johnson v. Kaufman*, supra. We likewise find persuasive *MacDonald*'s strong rejection of the notion that the constitutional right to a speedy trial is sufficiently analogous to the constitutional right to avoid double jeopardy to mandate pre-trial appeals at the defendant's insistence.

> There perhaps is some superficial attraction in the argument that the right to a speedy trial — by analogy to these other rights — must be vindicated before trial in order to insure that no nonspeedy trial is ever held. Both doctrinally and pragmatically, however, this argument fails. Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the factors outlined in *Barker v. Wingo*, supra, combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

435 U. S. at 860-861.

The Supreme Court of Georgia has likewise declined to expand the collateral order exception to the final judgment rule in classes of cases where, as here, "there has been no prior adjudication favorable

to the appellant(s) . . . , by operation of law or otherwise. [Cits.]" *Turner v. Giles*, 264 Ga. 812, 813 (1) (450 SE2d 421) (1994) (rejecting application of the collateral order doctrine to orders denying claims of qualified immunity in a 42 USC § 1983 action); see also *Waldrip v. Head*, 272 Ga. 572 (532 SE2d 380) (2000) (declining to give collateral order status to orders compelling discovery in habeas proceedings). It has also been suggested that, as a policy matter, the application process is most appropriate in those cases where the subject matter is to be reviewed under the deferential abuse of discretion standard. *In the Interest of J. P.*, 220 Ga. App. 895, 901 (470 SE2d 706) (1996) (Beasley, C. J., concurring specially). We observe that the interlocutory appeal procedure appears particularly appropriate where, as here, the speedy trial ruling complained of will be affirmed absent a finding of abuse of discretion. *Thomas v. State*, supra.

Finally, allowing constitutional speedy trial issues to be appealed by pre-trial direct appeal would have two negative effects in a "real world" application. First, it would create a Hobson's choice for the defendant who sincerely believes that the trial court *may* have abused its discretion in failing to grant an acquittal but who does not otherwise want to delay a potential trial any more than necessary. Such a defendant may either elect to undergo the ordeal of a trial that could ultimately be ruled nugatory on appeal or choose to delay that trial for several more months in order to facilitate pre-trial appellate review.

Second, there exists a significant underlying potential for abuse by defendants who may only wish to delay trial. A motion to dismiss based on the abridgement of the constitutional right to a speedy trial has none of the procedural safeguards present under the statutory right, OCGA § 17-7-170, which may discourage such a motion from being filed for purely dilatory purposes. Under OCGA § 17-7-170, a demand for speedy trial must be filed within a specific time period well in advance of any trial date; the time period in which the trial must be held is clearly specified; and service of notice must be accomplished. With such procedures in place, a motion to dismiss based on a violation of OCGA § 17-7-170 is not unexpected when meritorious and insufficient to divest the trial court of jurisdiction when clearly frivolous. *Strickland v. State*, 258 Ga. 764, 765 (373 SE2d 736) (1988); *Dixon v. State*, 196 Ga. App. 15, 17-18 (395 SE2d 577) (1990); *Rielli v. Oliver*, 170 Ga. App. 699, 700 (318 SE2d 173) (1984). See also *Abiff v. State*, 260 Ga. 434-435 (1), (2) (396 SE2d 483) (1990). On the other hand, none of these specific procedural safeguards are present when filing such motion under the constitutional right to a speedy trial. A motion to dismiss based on constitutional grounds can be filed immediately prior to trial without notice, without indication that speedy trial concerns are at issue, and without merit. Indeed, when inter-

posed for purposes of delay, the denial of such motion will accomplish its goal if direct appeal is available as a matter of right.

We think that these dilemmas can be greatly reduced by affording defendants the expedited treatment the interlocutory appeal procedure provides. "We note that the application process will allow appeals to come to the attention of the appellate court more quickly. This ability to seek expedited review and relief through the application process is warranted in cases involving [claims involving the constitutional right of speedy trial]." *Schmidt v. Schmidt*, 270 Ga. 461 (1) (510 SE2d 810) (1999) (holding that contempt orders entered in family violence actions are subject to the discretionary appeal procedure under OCGA § 5-6-35 (a) (2)).[3]

For all of the foregoing reasons, Callaway's appeal is dismissed as premature.

*Appeal dismissed. Andrews, P. J., and Miller, J., concur.*

DECIDED JULY 31, 2001 — ▮▮▮▮▮▮▮

*Elizabeth M. Grant*, for appellant.
*Kenneth W. Mauldin, District Attorney, Anna E. Watkins, Assistant District Attorney*, for appellee.

---

[3] Of course, as the preceding analysis suggests, interlocutory appeals would rarely be allowed by this Court based solely on constitutional speedy trial grounds. Nevertheless, the availability of this avenue of appeal offers the potential to prevent a "nonspeedy trial" from being held when the underlying circumstances appear particularly egregious.

