### S12A0799. SOSNIAK v. THE STATE.
(734 SE2d 362)

MELTON, Justice.

Marcin Waldemar Sosniak appeals the trial court's denial of his motion to dismiss his indictment due to an alleged constitutional speedy trial violation. Because we find that *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002), and *Boseman v. State*, 263 Ga. 730, n. 1 (438 SE2d 626) (1994), wrongly decided that the denial of a pre-trial constitutional speedy trial claim may be directly appealed, we dismiss Sosniak's appeal for failure to follow the interlocutory appeal procedures of OCGA § 5-6-34 (b).

1. The record shows that Sosniak was arrested on March 20, 2006 for murder,[1] and, with his co-defendants, Jason McGhee and Frank Ortegon, was indicted on September 10, 2007. On October 5, 2007, the

---

[4] We note that no exception to the exhaustion doctrine applies in this case. See *Ga. Dept. of Community Health*, supra.

[1] Sosniak has remained incarcerated since his arrest.

State filed notice of its intent to seek the death penalty against all three defendants, and, after the completion of pre-trial proceedings, the trial court issued a pre-trial report and order for review on September 3, 2009. Thereafter, this Court granted Sosniak's Application for Interim Review, and affirmed the rulings of the trial court. *Sosniak v. State*, 287 Ga. 279 (695 SE2d 604) (2010). Sosniak's trial was then scheduled for January 10, 2011, but the trial court continued the case until July 11, 2011 at Sosniak's request. On July 1, 2011, Sosniak filed another motion for continuance, which the trial court granted and continued the case until October 10, 2011. Sosniak filed another motion for continuance on October 5, 2011. The court denied the motion on October 6, 2011. Sosniak then filed a motion to dismiss alleging a constitutional speedy trial violation on October 7, 2011, which the trial court denied on October 28, 2011.

2. OCGA § 5-6-34 (a) (1) authorizes direct appeals only from "final judgments [of the trial court], that is to say, where the case is no longer pending in the court below."[2] Because " 'the only possible remedy' " for a constitutional speedy trial violation is dismissal of the indictment with prejudice, *Strunk v. United States*, 412 U. S. 434, 440 (93 SC 2260, 37 LE2d 56) (1973) (quoting *Barker v. Wingo*, 407 U. S.

---

[2] OCGA § 5-6-34 (a) provides in full:

    Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts, the constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state:

    (1) All final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35 [requiring an application to appeal certain types of issues and cases];

    (2) All judgments involving applications for discharge in bail trover and contempt cases;

    (3) All judgments or orders directing that an accounting be had;

    (4) All judgments or orders granting or refusing applications for receivers or for interlocutory or final injunctions;

    (5) All judgments or orders granting or refusing applications for attachment against fraudulent debtors;

    (6) Any ruling on a motion which would be dispositive if granted with respect to a defense that the action is barred by Code Section 16-11-173;

    (7) All judgments or orders granting or refusing to grant mandamus or any other extraordinary remedy, except with respect to temporary restraining orders;

    (8) All judgments or orders refusing applications for dissolution of corporations created by the superior courts;

    (9) All judgments or orders sustaining motions to dismiss a caveat to the probate of a will;

    (10) All judgments or orders entered pursuant to subsection (c) of Code Section 17-10-6.2;

    (11) All judgments or orders in child custody cases including, but not limited to, awarding or refusing to change child custody or holding or declining to hold persons in contempt of such child custody judgment or orders; and

    (12) All judgments or orders entered pursuant to Code Section 35-3-37.

514, 522 (92 SC 2182, 33 LE2d 101) (1972)), when a trial court *grants* a constitutional speedy trial motion, it must dismiss the case, and that ruling is clearly a final judgment that the State may directly appeal. See also OCGA § 5-7-1 (a) (1) (authorizing the State to appeal orders dismissing an indictment). However, when the trial court *denies* a speedy trial motion, the case remains "pending in the court below" and continues on to trial. OCGA § 5-6-34 (a) (2) through (12) authorize direct appeals of 11 specific types of trial court rulings that the General Assembly has deemed important enough to the case, or dispositive enough of the case, to warrant an immediate appeal, even though such rulings are often interlocutory rather than final judgments. But orders related to speedy trial rights, statutory or constitutional, are not listed. The usual remedy for a party aggrieved by an order that does not terminate the case in the trial court, and is not authorized for direct appeal by OCGA § 5-6-34 (a) (2)-(12), is to seek a certificate of immediate review from the trial court and then file an application for interlocutory appeal.

Sosniak's direct appeal rests instead on application of the so-called "collateral order" doctrine. This doctrine was originally developed by the United States Supreme Court as an interpretation of 28 USC § 1291, the federal statute that, much like OCGA § 5-6-34 (a) (1), authorizes direct appeals in federal cases only "from all final decisions of the district courts." See also 28 USC § 1292 (authorizing appeals from specified interlocutory orders in subsection (a), like OCGA § 5-6-34 (a) (2)-(12), and authorizing other interlocutory appeals at the discretion of both the trial and appellate courts, like OCGA § 5-6-34 (b)).

In 1977, in *Abney v. United States*, 431 U. S. 651, 653 (97 SC 2034, 52 LE2d 651) (1977), the Supreme Court held that the collateral order doctrine authorized the pretrial appeal of an order denying a motion to dismiss an indictment on double jeopardy grounds. Less than a year later, in *United States v. MacDonald*, 435 U. S. 850 (98 SC 1547, 56 LE2d 18) (1978), the Supreme Court, in what it called a "straightforward" application of the collateral order doctrine, unanimously rejected the contention that a defendant is entitled to a pretrial appeal of an order denying a motion to dismiss an indictment based on the alleged violation of his constitutional right to a speedy trial. Id. at 856.

The Court first recognized that, "[i]n sharp distinction to a denial of a motion to dismiss on double jeopardy grounds, a denial of a motion to dismiss on speedy trial grounds does not represent 'a complete, formal and, in the trial court, a final rejection' of the defendant's claim." Id. at 858 (quoting *Abney*, 431 U. S. at 659). Looking to the factors that courts must weigh in deciding a speedy

trial claim, particularly the issue of prejudice to the accused, see *Barker v. Wingo*, 407 U. S. at 530-532, the Court explained:

> Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial — when prejudice can be better gauged — would also be denied. Hence, pretrial denial of a speedy trial claim can never be considered a complete, formal, and final rejection by the trial court of the defendant's contention; rather, the question at stake in the motion to dismiss necessarily "remains open, unfinished [and] inconclusive" until the trial court has pronounced judgment.

*MacDonald*, 435 U. S. at 858-859 (citation omitted).

With respect to "the requirement that the order sought to be appealed be 'collateral to, and separable from, the principal issue at the accused's impending criminal trial, i.e., whether or not the accused is guilty of the offense charged,'" *MacDonald*, 435 U. S. at 859 (quoting *Abney*, 431 U. S. at 659), the Court noted that, in contrast to a double jeopardy claim, "there exists no such divorce between the question of prejudice to the conduct of the defense (which so often is central to an assessment of a speedy trial claim) and the events at trial. Quite the contrary, in the usual case, they are intertwined," id. The Court added:

> Even if the degree of prejudice could be accurately measured before trial, a speedy trial claim nonetheless would not be sufficiently independent of the outcome of the trial to warrant pretrial appellate review. The claim would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof.

Id. Unlike a double jeopardy violation, the harm of which is not eliminated by the defendant's acquittal after being twice put in jeopardy, "[t]he essence" of a speedy trial claim "in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed." Id. at 860.

Most importantly, the Supreme Court flatly rejected the argument that the right to a speedy trial is, like the right against double jeopardy or to reduced bail before trial, the sort of right "the legal and

practical value of which would be destroyed if it were not vindicated before trial." *MacDonald*, 435 U. S. at 860.

> There perhaps is some superficial attraction in the argument that the right to a speedy trial — by analogy to these other rights — must be vindicated before trial in order to insure that no nonspeedy trial is ever held. Both doctrinally and pragmatically, however, this argument fails. Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the factors outlined in *Barker v. Wingo*, supra, combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

*MacDonald*, 435 U. S. at 860-861. See also id. at 860, n. 7 ("Certainly, the fact that this Court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated does not mean that a defendant enjoys a 'right not to be tried' which must be safeguarded by interlocutory appellate review." (citation omitted)).

Finally, the Court concluded that allowing direct appeals from pretrial denials of speedy trial motions would actually undermine the values reflected in the Speedy Trial Clause. "Many defendants, of course, would be willing to tolerate the delay in a trial that is attendant upon a pretrial appeal in the hope of winning that appeal." *MacDonald*, 435 U. S. at 862. However, unlike the other rights the Constitution guarantees to the accused, " 'there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.' " Id. (citation omitted).

> Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes.

Id. Thus, "[a]llowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the

values manifested in the Speedy Trial Clause. And some assertions of delay-caused prejudice would become self-fulfilling prophecies during the period necessary for appeal." Id. In conclusion, the Court noted that, unlike a double jeopardy claim, *every* criminal case involves some delay between the defendant's arrest or indictment and trial, so "any defendant can make a pretrial motion for dismissal on speedy trial grounds and, if § 1291 is not honored, could immediately appeal its denial." Id. at 862-863. The Court "decline[d] to exacerbate pretrial delay by intruding upon accepted principles of finality to allow a defendant whose speedy trial motion has been denied before trial to obtain interlocutory appellate review." Id. at 863.

Therefore, persuasive precedent from the United States Supreme Court clearly indicates that rulings denying a pre-trial motion for speedy trial should be subject to interlocutory appeals procedures rather than being directly appealable.

Nonetheless, this Court strayed from this precedent, and, in *Callaway* and *Boseman*, we extended the collateral order doctrine as developed in *Abney*, and applied to statutory speedy trial claims in *Hubbard v. State*, 254 Ga. 694 (333 SE2d 827) (1985), to constitutional speedy trial claims in *Callaway* and *Boseman*. We did this and continued to do so in spite of several opinions from our Court of Appeals which pointed out the error of this extension of the law in light of the Supreme Court's ruling in *MacDonald*. See *Callaway v. State*, 251 Ga. App. 11 (553 SE2d 314) (2001); *Callaway v. State*, 258 Ga. App. 118, 121 (572 SE2d 751) (2002); *Smith v. State*, 260 Ga. App. 403 (579 SE2d 829) (2003) (physical precedent only); *Lamar v. State*, 262 Ga. App. 735 (586 SE2d 416) (2003).

Today, in line with the United States Supreme Court precedent in *MacDonald* and our Court of Appeals' admonitions, we hereby overrule our decisions in *Callaway* and in *Boseman*. Both cases wrongly determined that a defendant has the right to bring a direct appeal from a denial of a pre-trial motion for a constitutional speedy trial. Defendants must follow the interlocutory appeal procedures of OCGA § 5-6-34 (b) when pursuing appellate review in these cases.

3. We recognize that, given the clear, though incorrect, mandate of our overruled case law, Sosniak may be caught somewhat by surprise with this opinion. To ameliorate this surprise, we note that, under our prior precedent, Sosniak's speedy trial claim was properly denied by the trial court in any event.

Alleged violations of the constitutional right to a speedy trial must be analyzed under the aegis of *Barker v. Wingo*, supra. "First, the court must determine whether the interval from the accused's

arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered 'presumptively prejudicial.' " (Punctuation and footnote omitted.) *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). If the delay has crossed this threshold, the court must proceed to a "delicate, context-sensitive, four-factor balancing test" to determine whether a speedy trial violation has occurred. Id. This balancing test requires analysis of (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant. See id. at 56 (2) (b). A trial court's ruling on a motion to dismiss on speedy trial grounds is reviewed for abuse of discretion. Id. at 65 (3). Also, "a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal." (Citations omitted.) *Williams v. State*, 277 Ga. 598, 599 (1) (592 SE2d 848) (2004).

*Length of the delay.* Because there has not been a trial, the length of the delay must be calculated from the date of arrest or formal accusation to the date on which the motion to dismiss on speedy trial grounds was decided. *State v. Porter*, 288 Ga. 524, 526 (2) (b) (705 SE2d 636) (2011). The delay of more than five years in this case is presumptively prejudicial, and, as the trial court found, and the State does not dispute, the length of the delay should be weighed against the State. Id. at 527 (2) (c) (1).

*Reasons for the delay.* Whether the defendant or the State bears the primary responsibility for delay in reaching trial is "pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors." *Ruffin*, supra, 284 Ga. at 59 (2) (b) (ii). Deliberate delay is weighed heavily against the State. Delay resulting from "neutral" causes, such as negligence, has lighter weight. *Vermont v. Brillon*, 556 U. S. 81, 90 (II) (129 SC 1283, 173 LE2d 231) (2009). Of course, delay caused by the defense weighs against the defendant. Id. at 90-91 (II).

The trial court's order shows that it carefully considered the reasons for the delay, dividing the time between indictment and trial into a number of distinct periods. The trial court first found that the pre-indictment delay of eighteen months was caused by the State, was not purposeful delay, and would not weigh heavily against the State. The trial court next considered the period of time from Sosniak's arraignment in January through December of 2008, and weighed the time slightly against Sosniak, based on certain continuances he requested. The trial court weighed the time the case was under appellate review as neutral. The remittitur from the interim review was returned on June 24, 2010, and the following day, the trial court scheduled trial for January 10, 2011. On December 10, 2010, Sosniak's counsel requested a two-year continuance, contending that

inadequate funding precipitated the need for more time to prepare a mitigation defense.[3] The trial court continued the case until July 10, 2011. On June 23, 2011, Sosniak requested an additional continuance on the same ground as his request in December, and the trial court denied the motion on June 27, 2011. On July 1, 2011, Sosniak filed another continuance request, and the trial court granted the motion on July 6, 2011, thereby continuing the case until October 10, 2011. Sosniak filed yet another motion for continuance on October 5, 2011, on the same basis as requested in June and the previous December. The trial court denied the motion on October 6, 2011. Based on this period of time, the trial court found that the delay since the return of the remittitur on the interim appeal in late June weighed heavily against Sosniak.

The trial court did not abuse its discretion in any of these findings, and Sosniak's contentions that the delay should not be held against him because he lacked appropriate funding does not alter this result. The record supports the trial court's finding that Sosniak's counsel did not properly pursue funding for their client. Testimony clearly showed that, other than one invoice from February 2009 for an expert witness, Sosniak made no requests for payment for legal fees or otherwise.

*Defendant's assertion of the right.* "The relevant question for purposes of the third [speedy trial] factor is whether the accused has asserted the right to a speedy trial 'in due course.' " (Punctuation and footnote omitted.) *Ruffin*, supra, 284 Ga. at 63 (2) (b) (iii). This factor "requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." (Footnote omitted.) Id. Because delay often works to the defendant's advantage, see *Vermont v. Brillon*, supra, 556 U. S. at 90 (II), this factor is afforded " 'strong evidentiary weight.' " (Punctuation omitted.) *Marshall v. State*, 286 Ga. 446, 447 (1) (c) (689 SE2d 283) (2010) (quoting *Barker v. Wingo*, supra, 407 U. S. at 531). In this case, Sosniak waited over five years until the trial court would no longer grant his requests for a continuance to assert his right to a speedy trial. The trial court did not err in finding this eve-of-trial request untimely, and it properly weighed this factor against Sosniak.

*Prejudice.* To determine whether the defendant has been prejudiced by the delay, one must consider whether there has been

---

[3] On August 26, 2010, by administrative order, the trial court had transferred $50,000 from a trust account established for co-defendant Ortegon with money received from Georgia Public Defender Standards Council to an account for Sosniak.

oppressive pre-trial incarceration, whether the defendant has suffered undue anxiety, and, most importantly, whether the defense has been impaired by the passage of time. *Ruffin,* supra, 284 Ga. at 65 (2) (b) (iv). Although Sosniak was incarcerated for a lengthy period of time, "there has been no oppressive pre-trial incarceration, as [Sosniak] has made no showing that he has been subjected to substandard conditions in the county jail where he has been housed." *Weis v. State,* 287 Ga. 46, 54 (1) (d) (694 SE2d 350) (2010). Furthermore, Sosniak has not shown that the anxiety he may have suffered was greater than that always present to some extent. See *Higgenbottom v. State,* 290 Ga. 198, 202 (1) (D) (719 SE2d 482) (2011). Finally, with regard to prejudice to Sosniak's defense, Sosniak contends that, because of delays in the indictment process and the lack of funding, he was unable to locate his father, who he has not seen since he was a child. Caroline Boddie, Sosniak's mitigation specialist, testified that she believes Sosniak's father now lives near Warsaw, Poland. Boddie testified Sosniak's father could possibly be a mitigation witness at the sentencing phase of the trial. Even if Sosniak's father were located, whether he would be a witness is speculative at best, as conceded by Boddie. Sosniak has not had contact with his father for many years. The trial court correctly found the potential for the father to be a witness as speculative, and, as a result, Sosniak failed to satisfy his burden of showing prejudice.

*Appeal dismissed. All the Justices concur.*

NAHMIAS, Justice, concurring.

Appellant Marcin Sosniak is facing the death penalty for his alleged role in the murder of four people in Forsyth County on March 19, 2006. Although he was arrested the next day, Sosniak has been in no hurry to be tried, perhaps because this Court has affirmed, on interim review, the trial court's rulings that his admissions to the police, including telling them where the murder weapon was discarded, will be admissible at trial. See *Sosniak v. State,* 287 Ga. 279, 279-289 (695 SE2d 604) (2010). The majority opinion recounts Sosniak's repeated efforts since our June 2010 decision to delay the trial by seeking long continuances, two of which the trial court granted. See Maj. Op. at 41-42.

Only after the trial court denied yet another continuance in October 2011 did Sosniak assert, for the very first time, that the State had violated his constitutional right to a speedy trial. He did so on the Friday before the thrice-delayed trial was scheduled to begin, five-and-a-half years after his arrest, and having never filed a statutory demand for a speedy trial. The trial court held a hearing and denied the speedy trial motion within three weeks, but the trial could not

proceed, because under this Court's decisions in *Callaway v. State*, 275 Ga. 332, 332-333 (567 SE2d 13) (2002), and *Boseman v. State*, 263 Ga. 730, 730, n. 1 (438 SE2d 626) (1994), Sosniak could file a direct appeal, which served to stay the trial court proceedings until the appeal was decided. In Division 3, the majority opinion explains why Sosniak's speedy trial claim is entirely meritless. Indeed, the record supports the trial court's finding "that defense counsel have methodically maneuvered throughout the litigation to prevent the trial of this case." Despite "losing" this appeal, however, Sosniak has won exactly what he wanted when he unsuccessfully asked the trial court for another continuance — yet another long delay in his trial date, this time for more than a year.

Today this Court overrules *Boseman* and *Callaway* and aligns Georgia law with the persuasive reasoning of the United States Supreme Court on the same issue in *United States v. MacDonald*, 435 U. S. 850 (98 SC 1547, 56 LE2d 18) (1978). For the reasons given in the majority opinion as well as those discussed below, I concur fully in that decision. No longer will defendants in Georgia be able to invoke the right to a *speedy* trial to achieve exactly the opposite of the constitutional guarantee — lengthy and unnecessary *delays* in criminal trials. Defendants whose speedy trial rights truly have been violated can still obtain relief before trial through the interlocutory appeal procedures provided by statute, see OCGA § 5-6-34 (b), whereas the direct appeals this Court had allowed, purportedly under the collateral order "exception" to OCGA § 5-6-34 (a) (1),[4] were of real value only to defendants who misused them.

The Court of Appeals' opinions in *Callaway* prior to our granting certiorari and on remand from our decision accurately trace this Court's unfortunate journey from following the United States Supreme Court's *Abney* decision and applying the collateral order doctrine to *constitutional double jeopardy* claims, see *Patterson v. State*, 248 Ga.

---

[4] Although sometimes referred to as an "exception" to statutes allowing a direct appeal only from the final judgment in a case, the collateral order doctrine actually reflects a "practical rather than a technical construction" of such statutes, one that recognizes that a very "small class" of interlocutory rulings are effectively final in that they "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U. S. 541, 546 (69 SC 1221, 93 LE 1528) (1949). This is in accord with the understanding that the right to appeal, even in criminal cases, is not constitutional but "purely a creature of statute." *Abney v. United States*, 431 U. S. 651, 656 (97 SC 2034, 52 LE2d 651) (1977). Accord *Gable v. State*, 290 Ga. 81, 85 (720 SE2d 170) (2011) (explaining that compliance with the applicable statutory provisions is considered an " 'absolute requirement' " to confer jurisdiction on the appellate court to hear an appeal and that the courts have " 'no authority to create equitable exceptions to [such] jurisdictional requirements' " (citations omitted)).

875, 876 (287 SE2d 7) (1982); to extending that ruling to *statutory speedy trial* claims based on decisions treating the violation of OCGA § 17-7-170 as an automatic acquittal subject to double jeopardy protection, see *Hubbard v. State*, 254 Ga. 694 (333 SE2d 827) (1985); to extending that ruling to *constitutional speedy trial* claims simply by citation to *Hubbard*, without any reasoning, much less distinction of the United States Supreme Court's contrary reasoning in *MacDonald*, see *Boseman*, 263 Ga. at 730, n. 1; to confirming *Boseman*'s holding in *Callaway* based primarily on the ground that the summary conclusions in this Court's footnotes are precedents binding on the Court of Appeals, with only a single paragraph of substantive reasoning that, remarkably, failed to mention the United States Supreme Court's on-point speedy trial decision in *MacDonald*. See *Callaway v. State*, 251 Ga. App. 11, 12-13 & n.1 (553 SE2d 314) (2001), reversed, 275 Ga. at 332-333, on remand, 258 Ga. App. 118, 118-121 (572 SE2d 751) (2002).

In its opinion on remand, the Court of Appeals recognized that defendants would use our holding in *Callaway* to delay their trials:

> [A]n OCGA § 17-7-170 speedy trial claim . . . contains procedural safeguards which preclude the use of that statute solely for purposes of abusive delay . . . . None of these specific procedural safeguards exist with regard to the constitutional right to a speedy trial. Moreover, it has been recognized that "delay" is a very real defense strategy. A motion to dismiss based solely on constitutional speedy trial grounds can be filed immediately prior to trial; without notice; without any indication that speedy trial concerns were ever at issue; and completely without merit. "When interposed for purposes of delay, the denial of such motion will accomplish its goal if direct appeal is available as a matter of right."

*Callaway*, 258 Ga. App. at 118.[5] Predicting that the number of pretrial appeals of denied constitutional speedy trial claims would increase in both of Georgia's appellate courts, the Court of Appeals expressed hope that this Court would ultimately reconsider its view, saying "we know that, in some instances, 'Time makes more converts than reason.'" Id. at 121 (quoting Thomas Paine, Common Sense (1776)).

---

[5] OCGA § 17-7-171, which governs statutory speedy trial claims by defendants accused of capital offenses, includes similar procedural safeguards.

The next year, in *Lamar v. State*, 262 Ga. App. 735 (586 SE2d 416) (2003), the Court of Appeals considered the case of a defendant who was on bond when he came to court to dispose of two traffic charges; when he learned that the State sought to incarcerate him for a year on the charges, he filed a plainly meritless motion to dismiss for violation of his constitutional right to a speedy trial. See id. at 736. After the trial court promptly heard and denied the motion, the defendant's "lawyer was ready" with notices of appeal and a " 'check for the twenty-five dollars for each appeal.' " Id. at 736-737. The resulting delay in disposing of the appeal allowed the defendant to remain on bond for another eight months. See id. at 737. Bound by *Callaway*, the Court of Appeals accepted the direct appeal and decided the case on the merits, rejecting the defendant's speedy trial claim in a single paragraph. See id. at 738. But first the court noted,

> And, so, we see firsthand the "persuasive rationale for . . . creating a distinction between constitutional and statutory speedy trial rulings" when it comes to direct appeal. . . . As this case demonstrates, such pretrial delay is all too possible under the current state of the law in Georgia, even though, "Delay often works to a defendant's advantage." Unfortunately, change of opinion wrought from dear-bought experience takes not only recognition, but receptivity.

Id. at 737-738 (footnotes omitted).[6]

As the Court of Appeals predicted, the flow of these direct appeals of interlocutory speedy trial orders became constant, adding to the already heavy dockets of Georgia's appellate courts.[7] Indeed, given the time required for a busy clerk of the trial court to compile the record and transmit it to the appellate court, for busy lawyers to brief (and sometimes orally argue) the case, and for a busy appellate court to draft and issue an opinion, a defendant who *really* wanted a speedy trial and so filed a statutory speedy trial demand under OCGA §§ 17-7-170 or 17-7-171 would usually get his trial (or be automatically acquitted for not being tried) before his constitutional speedy trial appeal was decided and the case returned to the trial court to be scheduled for

---

[6] In all, the various Court of Appeals opinions criticizing *Boseman* and *Callaway* were joined by four current Judges (Chief Judge Ellington, Presiding Judges Miller and Phipps, and Judge Andrews) as well as four former Judges (Eldridge, Blackburn, Johnson, and Mikell).

[7] By my count, in just the last two full calendar years (2010 and 2011), this Court had to decide at least 13 such cases, and the Court of Appeals decided 30 more. It should be noted that in the many non-murder criminal appeals decided by the Court of Appeals, the defendant could obtain another multi-week or multi-month delay by filing a petition for certiorari in this Court.

trial some time in the future.[8] Yet the common fact pattern of the appeals in these cases is that the defendant never filed a statutory speedy trial demand or otherwise timely asserted his speedy trial right; instead, the defendant simply waited while time passed (sometimes a long time) and the State negligently failed to move the case to trial, suffering no actual prejudice or unusual anxiety from the delay, and then when the trial was actually imminent, the defendant filed a constitutional speedy trial motion and, after the motion was denied, filed a direct appeal that garnered further delay. See, e.g., *Williams v. State*, 290 Ga. 24 (717 SE2d 640) (2011); *Fallen v. State*, 289 Ga. 247 (710 SE2d 559) (2011); *Robinson v. State*, 287 Ga. 265 (695 SE2d 201) (2010); *Weems v. State*, 310 Ga. App. 590 (714 SE2d 119) (2011); *Stewart v. State*, 310 Ga. App. 551 (713 SE2d 708) (2011); *Higgins v. State*, 308 Ga. App. 257 (707 SE2d 523) (2011).

It must also be emphasized that the pretrial direct appeals that our cases allowed did little if anything to advance the constitutional right supposedly at issue. The lengthy delays that these appeals caused in getting cases to trial worked directly against society's interests in speedy criminal trials. See *Barker v. Wingo*, 407 U. S. 514, 519 (92 SC 2182, 33 LE2d 101) (1972) ("The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused."); *Weis v. State*, 287 Ga. 46, 51 (694 SE2d 350) (2010) ("While the [federal and state] constitutional speedy trial provisions primarily safeguard the defendant's rights, they also recognize the public's interest — including the interest of crime victims — in the resolution of criminal cases without unnecessary delay . . . .").

Nor are guaranteed pretrial appeals necessary to protect the defendant's constitutional rights. Such appeals have very rarely been

---

[8] For example, had Sosniak filed a statutory speedy trial motion after this Court's interim review decision, by now he would have been put on trial or acquitted by operation of law. See *Walker v. State*, 290 Ga. 696, 698 (723 SE2d 894) (2012) (holding that the trial in a capital felony case must commence within three terms of court after the term at which a statutory speedy trial motion is filed under OCGA § 17-7-171); OCGA § 15-6-3 (5.1) (providing that the terms of court for the Bell-Forsyth Judicial Circuit commence on the second Monday in March, July, and November). Sosniak could have demanded a speedy trial without losing his right to ultimately appeal the denial of his constitutional speedy trial motion if he was convicted at trial, because a defendant may file both a statutory speedy trial motion demanding a prompt trial and a speedy trial motion complaining that the trial was unconstitutionally delayed. See *Rafi v. State*, 289 Ga. 716, 718 (715 SE2d 113) (2011).

successful, in part because the trial court's exercise of discretion in weighing the *Barker v. Wingo* factors is entitled to substantial deference on appeal. Indeed, of the scores of constitutional speedy trial motions denied by trial courts and directly appealed in the decade since *Callaway*, I have found not a single one reversed by this Court, and only eight reversed by the Court of Appeals.[9] Moreover, in the few cases where a defendant's constitutional speedy trial claim is denied but the trial court and appellate court believe the question is close, interlocutory review is available through compliance with the *statutorily provided* interlocutory appeal procedure — obtaining a certificate of immediate review from the trial court and filing an interlocutory appeal application in the appellate court, see OCGA § 5-6-34 (b). See also *Callaway*, 251 Ga. App. at 16 (making this point). A defendant whose interlocutory application cannot convince the appellate court that the trial court's order *"appears* erroneous" to obtain review, Supreme Court Rule 31 (2); Court of Appeals Rule 30 (a) (2), has little chance of convincing the appellate court that the order *is* erroneous to obtain a reversal. In any event, the defendant will always have the opportunity for appellate review, because even if his request for an interlocutory appeal is rejected, he can raise the trial court's denial of his speedy trial claim in a direct appeal after trial (assuming he is convicted) — at a time when the appellate court is better able to evaluate the actual delay between charges and trial as well as any resulting prejudice. See *MacDonald*, 435 U. S. at 858-859.

In sum, the strict time limits applicable to the interlocutory appeal procedure and the ability of the trial and appellate courts to weed out weak claims prevent that process from being abused to obtain a lengthy delay of the trial where a speedy trial claim has no merit. See OCGA § 5-6-34 (b) (requiring the trial court to grant a certificate of intermediate review within ten days of the order, the defendant to file the interlocutory application within ten days after that, and the appellate court to grant or deny the application within 45 days). The direct appeals allowed by *Boseman* and *Callaway* were of real value only to those who misused them.

Finally, we should consider whether the doctrine of stare decisis counsels against overruling *Boseman* and *Callaway*. It does not.

> In considering whether to reexamine a prior erroneous holding, we must balance the importance of having the question *decided* against the importance of having it *decided*

---

[9] In other cases, the Court of Appeals identified some error in the trial court's analysis and remanded for the trial court to exercise its discretion again, free to reach the same result.

*right*. In doing so, we consider factors such as the age of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning.

*State v. Jackson*, 287 Ga. 646, 658 (697 SE2d 757) (2010) (citations omitted; emphasis in original). The precedents in question are neither ancient nor entrenched. The issue is one of appellate procedure, not contract, property, or other substantive rights in which anyone has a significant reliance interest. As shown above, these decisions produced a dysfunctional rather than workable appellate system, one that undermined rather than protected the substantive constitutional right at stake. Finally, and most importantly, *Boseman*'s reasoning was nonexistent, while *Callaway*'s one paragraph of analysis suffers in comparison to the persuasive reasoning of *MacDonald* and the Court of Appeals cases. It is entirely appropriate, therefore, to overrule *Boseman*, *Callaway*, and all other Georgia decisions that have followed their incorrect holding on this important point of appellate procedure.

I am authorized to state that Justice Blackwell joins in this concurrence.

DECIDED NOVEMBER 19, 2012.

*Ashway & Haldi, Charles G. Haldi, Jr., William A. Finch*, for appellant.

*Penny A. Penn, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.

