**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A0982. MOCERI v. THE STATE.                                          AD-038C

ADAMS, Judge.

Dominic Moceri, III, filed a direct appeal from the trial court's denial of his Motion for Discharge and Acquittal on speedy trial grounds. In an order dated November 18, 2011, this Court found that Moceri, indeed, had a right to a direct appeal and granted his emergency motion to stay the proceedings in the trial court pending the appeal.[1] But in an opinion dated November 19, 2012, the Supreme Court of Georgia held that no right of direct appeal lies from the denial of a constitutional speedy trial motion. *Sosniak v. State*, __ Ga. __ (Case No. S12A0799, decided

---

[1] The State subsequently filed a motion asking this Court to dismiss the stay, "arguing that because the trial court's summary judgment order found appellant's appeal to be frivolous, the court was not required to allow a direct appeal," but the motion was denied.

November 19, 2012).[2] Accordingly, we must dismiss Moceri's appeal for lack of jurisdiction.

As the Georgia Supreme court recognized, however, "given the clear, though incorrect, mandate" of prior Supreme Court precedent,[3] an appellant with a pending speedy trial appeal "may be caught somewhat by surprise" by the *Sosniak* opinion. Id. at __ (3). In an effort to ameliorate such surprise in this case, we note that the trial court's order denying Moceri's speedy trial motion was insufficient to allow us to determine whether the trial court abused its discretion because the trial court made no findings pursuant to *Barker v. Wingo,* 407 U.S. 514 (92 SC 2182, 33 LE2d 101) (1972). Thus, the order was subject to vacatur and remand "for entry of an order including proper findings in accordance with *Barker v. Wingo . . . .*" *Higgenbottom v. State*, 288 Ga. 429, 430 (704 SE2d 786) (2011).

---

[2] Prior to *Sosniak*, this Court's prior rulings on emergency motion would have been binding as to future proceedings in this case and could not have been re-considered on appeal. See *Melton v. State*, 252 Ga. App. 29, 30 (2) (555 SE2d 488) (2001); *Blalock v. State*, 201 Ga. App. 461 (411 SE2d 914) (1991).

[3] See *Callaway v. State,* 275 Ga. 332 (567 SE2d 13) (2002) and *Boseman v. State,* 263 Ga. 730, n.1 (438 SE2d 626) (1994), both expressly overruled by *Sosniak*.

In considering a motion asserting the denial of the constitutional right to a speedy trial, courts must apply a balancing test, considering the following factors:

> (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. [at 530 (IV)]. The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal.

(Citation omitted.) *Brown v. State*, 287 Ga. 892, 894 (1) (700 SE2d 407) (2010). An appellate court reviews the denial of a speedy trial motion for an abuse of discretion. *Higgenbottom v. State*, 288 Ga. at 430. "It is imperative, therefore, that in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker*. Absent such findings, there is no exercise of discretion for this Court to review." (Citations omitted.) Id. at 430-431.

Here, the trial court's order denies Moceri's speedy trial motion based upon the record and the argument of counsel, which included a defense argument on the *Barker v. Wingo* factors, before making a separate finding that the motion was frivolous and dilatory. We must presume, therefore, that the trial court considered the

3

merits of Moceri's argument in denying the motion. But because the trial court made no findings on the *Barker v. Wingo* factors, we would have been unable to consider whether the trial court properly exercised its discretion.

Further, we note that the additional evidentiary issues Mocieri raised in this appeal are not directly appealable standing alone. And this Court denied Mocieri's prior application for interlocutory appeal on these issues, and the Georgia Supreme Court denied his petition for certiorari. In any event, because the resolution of a speedy trial motion is potentially dispositive,[4] it would have been premature to address Moceri's appellate arguments on the evidentiary issues until after remand.

Finally, we emphasize *Sosniak*'s holding that in the future, any appeal from the denial of a constitutional speedy trial motion must be made pursuant to the procedures for interlocutory appeal set forth in OCGA § 5-6-34 (b).

*Appeal dismissed. Barnes, P. J., concurs. McFadden, J., concurs specially.*

---

[4] *Strunk v. United States*, 412 U.S. 434, 439-440 (II) (93 SC 2260, 37 LE2d 56) (1973) ("In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* [*v. Wingo*] noted, 'the only possible remedy.'"). See also *Ruffin v. State*, 284 Ga. 52, 66 (3), n. 63 (663 SE2d 189) (2008).

A12A0982. MOCERI v. THE STATE.                                    AD-038C

MCFADDEN, Judge, specially concurring.

I concur fully in the majority opinion. I write separately to emphasize that the issue raised in Moceri's second enumeration of error also returns to the breast of the trial court and would also be subject to appellate review upon conviction. His second enumeration complains of the trial court's decision to impose a discovery sanction suppressing all evidence as to the only issue worth trying in this vehicular homicide case: his defense that a mechanical failure caused sudden acceleration.

It is of no consequence that we denied Moceri's earlier application for interlocutory appeal from that ruling. *Holmes v. Achor Center, Inc.*, 249 Ga.App. 184, 186-187 (1) (547 SE2d 332) (2001).

The defense is at least plausible. The record reflects that, in the early morning hours Moceri was driving a female passenger home from a date in his father's 1995

BMW sedan. A police officer, having concluded that Moceri was speeding and failing to maintain his lane, undertook a routine traffic stop. Rather than pull over, Moceri's car sped up. As it rounded a curve, it hit a telephone pole, killing the passenger.

The manufacturer had issued a recall stating that cars of the make and model of Moceri's should be inspected for possible problems that could cause them to not decelerate properly on release of the gas pedal. Moceri's car had not been inspected for that problem. The state was aware of the recall and had the car in its possession for nearly a year after the collision. But the state confined its investigation to a single conversation with a dealer, after which it chose to accept at face value the dealer's representation that the recall did not apply to Moceri's car.

Moceri's blood alcohol level was .059 – just under three-quarters of .08, the level at which a driver is intoxicated as matter of law. OCGA § 40-6-391 (a) (5). There is no other evidence in the record that Moceri had a motive to engage in a fatally reckless attempt to evade a routine traffic stop. Nor is there any evidence of similar past behavior on his part.

After the car was returned to Moceri and after he – belatedly – provided reciprocal discovery disclosing the details of his sudden acceleration defense, the trial

court ordered that the state be allowed an opportunity to inspect it. Moceri subsequently reported that the car had been sold and the relevant evidence destroyed.

In a detailed order, the trial court found a pattern of discovery violations by defense counsel and concluded that "Defendant acted in bad faith." That finding is supported by numerous instances of discovery violations on the part of defense counsel,[1] which of course are attributable to Moceri. But it also rests in part on findings of misconduct by third parties who had control of the car, particularly that one of those third parties was motivated by a hope to do business with Moceri's father. Attributing the conduct of third parties to Moceri is problematic.

The trial court went on to reject the argument that, in light of the State's knowledge of the recall, "the State was required to anticipate the specific defense to the degree urged by the Defendant." But that aspect of the order is not supported by detailed findings. The order makes no allowance for the possibility that the Moceri's evidence might have been, at least in part, fairly foreshadowed by the recall notice. The order directs, "Evidence and testimony about a possible mechanical failure,

---

[1] I note, however, that at oral argument defense counsel represented that at least some of those violations were delays caused by difficulty paying for expert testimony and that defense counsel ultimately paid those expenses out of his own pocket.

3

including a manufacturer recall, affecting the 1995 BMW M3 vehicle at issue shall be excluded from the trial of this case."

The reciprocal discovery statutes authorize trial courts to exclude evidence in appropriate cases. OCGA § 17-16-6 provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that the defendant has failed to comply with the requirements of this article, the court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

In enacting this statute, the legislature "cloaked the trial court with the discretion to use its own judgment to ensure a fair trial. Thus, the remedy a trial court fashions to cure a discovery violation is reviewed on appeal only for abuse of discretion." *Jones v. State*, 290 Ga. 576, 577-578 (2) (722 SE2d 853) (2012) (Citation and punctuation omitted). But "[e]xclusion of evidence is a particularly harsh sanction and should be imposed only where there is a showing of prejudice to the [state] and bad faith by the [defendant]." (Citation and punctuation omitted). *Leger v. State*, 291 Ga. 584, 586 (2) (732 SE2d 53) (2012).

As to prejudice to the state, it is true that the state is now unable to examine the car; but any harm is tempered by the fact that the state failed to conduct such

4

investigation during the year that it had possession of it. And, even after the trial court ordered that the car be made available to the state for inspection, the state did not arrange for such an inspection to occur until months later. See *Norley v. State*, 170 Ga. App. 249, 252 (4) (316 SE2d 808) (1984) (defendant's failure to timely utilize court-ordered opportunity to conduct independent testing of substance amounted to waiver of any right to the independent analysis).

And although the trial court found bad faith, there is no evidence that Moceri destroyed or participated in the destruction of the evidence. Rather, it is undisputed that the evidence was lost by a third-party, the mechanic with whom the vehicle had been stored. It is unclear from the record if the loss of the vehicle was due to intentional conduct or if it was the result of negligence, mistakes and misunderstandings. Indeed, in the converse situation involving the loss of evidence by the state due to mistake or negligence, such action has been found not to rise to the level of bad faith. See *Fincher v. State*, 276 Ga. 480, 484 (5) (578 SE2d 102) (2003); *Brannan v. State*, 275 Ga. 70, 73-74 (2) (c)(561 SE2d 414) (2002) (vehicle impounded by state lost when towing company under contract with police released vehicle to lienholder, which repaired and resold it); *Champion v. State*, 260 Ga.App. 12, 14 (2) (579 SE2d 35) (2003). Regardless, since Moceri himself did not destroy

the evidence, any bad faith of others must somehow be imputed to him in order to justify the trial court's imposition of the ultimate sanction of excluding his sole defense. See *Williams v. State*, 256 Ga. App. 249 (568 SE2d 132) (2002) (absent showing of bad faith and prejudice to state, trial court erred in imposing harsh sanction of excluding certain defense evidence).

The trial court has stripped Moceri of his sole defense. It seems that a remedy less harsh than exclusion of all evidence, which would protect the interests of the state while still allowing Moceri to present his sole defense, could be fashioned. Trial courts have broad discretion to formulate appropriate remedies for discovery abuses. But the state has not cited, and I have not found, any other criminal case in which a trial court imposed the ultimate sanction for a discovery violation and thereby eliminated a defendant's ability to present any evidence in support of his only defense.

This discovery sanction is – in effect – a summary judgment of conviction for homicide. That is extraordinarily harsh. And it is, in my view, a matter of grave concern.